No. 50,711

STATE OF KANSAS, *Appellee,* v. JOSEPH JONES, *Appellant.*

(601 P.2d 1135)

Opinion filed October 27, 1979.

*John P. Biscanin,* of Kansas City, argued the cause and was on the brief for appellant.

*John J. McNally,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is a direct appeal by defendant-appellant, Joseph Jones, from a jury conviction of one count of aggravated

robbery, K.S.A. 21-3427. Defendant was sentenced to a term of not less than five years nor more than life with a mandatory term of imprisonment under K.S.A. 1978 Supp. 21-4618.

The identity of the defendant as one of the perpetrators of the robbery was the principal issue at the trial.

The robbery occurred on the evening of January 3, 1978, at approximately 8:30 p.m. Two black men entered the U-Totem store at 846 Central, Kansas City, Kansas, and approached Lawrence Pollock, the only employee on duty. Mr. Pollock testified he had just finished waiting on two customers who were leaving as the robbers came in. As the two men approached, one pulled a revolver from his waistband and announced a holdup. While Pollock was putting money from the cash register into a paper sack, Kenneth Soverns, one of the customers he had waited on just prior to the holdup, reentered the store to look for something that he had apparently forgotten to purchase. As the two robbers turned to leave Pollock pulled a revolver that he was carrying and ordered the two to stop. Upon seeing Pollock's gun, the armed robber turned toward Pollock. Assuming the robber was going to shoot, Pollock fired one shot which missed both robbers and shattered the glass in one of the front doors. The robber with the gun scrambled out the door and the other man fell to the floor and stayed there until the police arrived.

Upon their arrival, the police found Mario White on the floor and Pollock holding his gun on him. A General Motors car key recovered from White's person by police was later found to fit the door and trunk of a car owned by defendant Jones. It did not fit the ignition.

Later that evening, at the police station, Pollock was shown two books of photographs in an attempt to secure an identification of the man who got away. Pollock was unable to identify a suspect at that time. In his statement to the police, Pollock could only describe the robber as being a black male with a medium complexion and of medium height and weight. He could not recall how the robber was dressed, whether or not he had any facial hair or if he had a distinguishing haircut.

The day after the robbery the police showed five black and white pictures to Pollock and Soverns. Pollock identified a picture of Joseph Jones as that of one of the robbers but Soverns could not make a positive identification.

Jones was arrested and on January 6, 1978, a lineup was conducted for Pollock and Soverns. Pollock identified Jones as the robber but Soverns selected a different individual from the lineup.

Kenneth Soverns, the customer in the store at the time of the robbery, testified that he did not see any weapon of any kind in the possession of the robbers and that the robber who ran out of the store clearly had a noticeable goatee. Defendant presented testimony of several witnesses from his place of employment to the effect that on the day of the robbery he had been clean-shaven. He also presented two alibi witnesses who placed Jones in Kansas City, Missouri, at the time of the crime. Jones testified in his own behalf and denied any participation in, or knowledge of, the robbery.

The other customer who had been in the store just prior to the robbery was Leroy Soverns, age 17, the nephew of Kenneth. He had departed from the store, along with his uncle, as the robbers were entering. Leroy remained in the Soverns vehicle outside the front door to the store while his uncle reentered to look for the additional item he wished to purchase. Leroy had a clear view of the front of the store, the door and the events that took place during the robbery. Leroy had been served with a subpoena but forgot about the trial and did not appear at the scheduled time. It is his failure to appear and testify on behalf of the defendant that leads to the issues before this court.

Defendant Jones is appealing his conviction based on what he asserts are two errors made by the trial court. The first error asserted is that the trial court erred in failing to issue a bench warrant during the trial for the presence of Leroy Soverns, an eyewitness to the robbery. The second is that the trial court erred when it refused to grant a short continuance during the trial so that the eyewitness could be located and brought in by defense counsel to testify.

Defendant raised both points during trial and again in his motion for a new trial, which was denied.

Prior to trial two subpoenas had been issued to the sheriff for service upon Leroy Soverns. Both were returned unserved with the notation that the witness could not be located. The attorney for the defendant then had a third subpoena issued which he personally served upon Leroy. He also discussed the proposed

appearance and testimony with Leroy and his parents. Leroy appears to have been agreeable to appearing on defendant's behalf. It was anticipated that Leroy and his uncle would be needed on Tuesday, the second day of trial. Kenneth appeared and testified but could not account for Leroy's absence. Mr. Biscanin, the defendant's attorney, contacted Leroy's mother and she advised that he must have forgotten about the scheduled appearance. During the noon recess, Mr. Biscanin searched for the missing witness but could not locate him. When court resumed Mr. Biscanin asked that the court issue a bench warrant so that the sheriff might bring Leroy to court and provided addresses where he might be found. The judge agreed and advised both counsel that he was directing the warrant to issue forthwith. He then advised defense counsel to proceed with his case. Defendant finished with his other witnesses and completed his case, except for the anticipated testimony of Leroy, by mid-afternoon. At that point the trial court advised defendant's counsel that he had had second thoughts about issuing the bench warrant. The court was of the opinion that he did not have jurisdiction to issue a bench warrant for a minor and that only the juvenile division of the court had any jurisdiction over minors. He also voiced the fear that if he issued a warrant wrongfully he might get sued and stated he didn't want that to happen.

At this point defense counsel asked for a continuance so that Leroy could be located and produced to testify. The motion was refused at which time defense counsel made a proffer of the expected testimony of Leroy. Basically it was (1) Leroy had a clear view of the robber from the time Pollock fired his weapon until the robber disappeared into the parking lot after having passed by the vehicle occupied by Leroy; (2) Leroy did not see a weapon at any time; (3) the robber, on exiting the store, had the paper sack in one hand and pushed the door open with the other; and (4) the robber definitely had noticeable facial hair, including a goatee. This proffered testimony was consistent with that of the other eyewitness, Kenneth Soverns, who had testified the robber had facial hair, including a goatee. Defense witnesses testified Jones was clean-shaven and the other eyewitness, Pollock, didn't know. It is obvious therefore that the testimony of Leroy was crucial to the defense and the inability to present it prejudicial to the defendant. Not only was the question of identity a vital point,

the testimony of Leroy was also crucial on the question of whether the robber had a firearm.

The State, for the first time on appeal, asserts the position that although the trial judge may have been in error in his determination that he had no jurisdiction to issue a bench warrant for a minor, nevertheless he made the right decision even though for the wrong reason. It is argued that the subpoena served on Leroy by Mr. Biscanin was technically defective as counsel did not file an affidavit with his return.

K.S.A. 60-245(c) deals with service of subpoenas and states:

"A subpoena may be served by the sheriff, by his deputy, or by any other person who is not a party and is not less than eighteen (18) years of age. Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person and by tendering to him the fees for one day's attendance and the mileage allowed by law. *When the subpoena is not served by the sheriff, or by his deputy; proof of service shall be shown by affidavit."* (Emphasis added.)

Defendant's counsel personally served a subpoena on Leroy Soverns, who was an eyewitness to the crime with which the defendant was charged. In serving the subpoena, the attorney met all of the requirements of K.S.A. 60-245(c) except that he apparently failed to file the required affidavit of service with the court. K.S.A. 60-313 allows any process, return or proof of service to be amended at *any time* unless such amendment would materially prejudice the substantial rights of the party against whom process was issued. In *Transport Clearing House, Inc. v. Rostock,* 202 Kan. 72, 447 P.2d 1 (1968), this court held that under K.S.A. 60-313, the trial judge had the discretionary power to amend the sheriff's return of service after judgment in order to show the actual facts concerning the date of service as long as material prejudice to a party would not result. In that case, the dates on a return of service on an execution were incorrect.

In an earlier case, *Aultman v. Wier,* 67 Kan. 674, 74 Pac. 227 (1903), the Kansas Supreme Court held that a summons which lacked the signature of the clerk was not void but merely irregular and therefore amendment was proper.

Assuming the State had raised the issue of the technical defect in the attorney's return of the subpoena, K.S.A. 60-313 would have authorized a proper amendment. Where process has been properly served, a technical defect in the paperwork that can be readily corrected to speak the truth, and which does not materially prejudice the substantial rights of the party against whom the

process was issued, should not be allowed to interfere with substantial justice. The State's argument on this point is without merit.

Was the court in error in ruling he had no jurisdiction to issue a bench warrant for a minor? We think so.

Section 10 of the Bill of Rights to the Kansas Constitution provides:

"In all prosecutions, the accused shall be allowed to appear and defend in person, or by counsel; to demand the nature and cause of the accusation against him; to meet the witness face to face, *and to have compulsory process to compel the attendance of the witnesses in his behalf,* and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. No person shall be a witness against himself, or be twice put in jeopardy for the same offense." (Emphasis added.) See also U.S. Constitution, Sixth Amendment.

### K.S.A. 60-407 provides:

"Except as otherwise provided by statute (*a*) every person is qualified to be a witness, and (*b*) no person has a privilege to refuse to be a witness, and (*c*) no person is disqualified to testify to any matter, and (*d*) no person has a privilege to refuse to disclose any matter or to produce any object or writing, and (*e*) no person has a privilege that another shall not be a witness or shall not disclose any matter or shall not produce any object or writing, and (*f*) all relevant evidence is admissible."

There can be no question that the testimony of Leroy would be relevant evidence that could be admitted if he had been present. Under the constitution and our statutes, the court has the inherent power to enforce its process and to insure the presence of witnesses. Counsel cites no authority and our research has disclosed none, but the fact that the potential witness is a minor does not divest the court of the power to enforce process for such minor's attendance in court. A minor enjoys no privilege or disqualification under K.S.A. 60-407 and may be compelled to appear and give evidence the same as an adult. As early as 1879 this court in *The State v. Roark,* 23 Kan. 147, held:

"A defendant in a criminal prosecution is entitled, under the constitution, to compulsory process to compel the attendance of witnesses within the jurisdiction of the court, in his behalf."

"Where material and necessary witnesses are duly subpoenaed in behalf of an accused, in a criminal prosecution, and such witnesses are within the jurisdiction of the court, *held,* error to force said accused to trial and to conclude the trial, against his protest, before the return of the compulsory process issued to bring the disobedient witness into court, in the absence of any reason for it not being executed and returned." Syl. ¶ 2 and ¶ 3.

Considering the nature and importance of the testimony expected from Leroy, we are of the opinion the trial court committed prejudicial error in not compelling his attendance. See also K.S.A. 22-3214.

The appellant next argues that the court should have granted him a short continuance the afternoon of the trial or until the next morning so that his counsel could produce Leroy.

K.S.A. 60-240(*b*) provides in part:

"The court may for good cause shown continue an action at any stage of the proceedings upon such terms as may be just."

In *State v. Hickock & Smith,* 188 Kan. 473, 363 P.2d 541 (1961), this court stated:

"[I]t has been held many times, and is well-established in this jurisdiction, that the matter of a continuance in a criminal prosecution is largely within the discretion of the trial court and that its ruling thereon will not be disturbed unless it has been made to appear that such discretion has been abused to the prejudice of substantial rights of a defendant. (*State v. Smith,* 173 Kan. 807, 812, 252 P.2d 917; *State v. Morrow,* 179 Kan. 63, 292 P.2d 1094, and decisions there cited; *State v. Stubbs,* 186 Kan. 266, 271, 349 P.2d 936, and decisions there cited.)" p. 482.

See also *State v. Zimmer,* 198 Kan. 479, 426 P.2d 267, *cert. denied* 389 U.S. 933, 19 L.Ed.2d 286, 88 S.Ct. 298 (1967).

This court in *State v. Williamson,* 210 Kan. 501, 506, 502 P.2d 777 (1972), held that "[w]hen a party seeks a continuance because of the absence of a witness, he must show due diligence to procure the witness' testimony; he does not warrant a continuance merely upon an assertion he relied upon the promises of witnesses that they would be present and testify."

In *State v. Williamson,* two of appellant's witnesses failed to appear at the trial. Appellant requested a continuance in order to find the witnesses but no showing of due diligence to procure the witnesses' testimony was made.

In the present case there can be no question about the diligence of counsel. After two subpoenas had been returned unserved by the sheriff, defendant's attorney had a third one issued and personally served it on the witness. Counsel discussed the case with the witness and his parents. Counsel arranged for the witness to be present Tuesday morning and when he forgot to show up, counsel spent the noon recess looking for him. Counsel requested a bench warrant and was first assured by the trial court

that one would issue. When the court changed its mind, after defendant's other witnesses had testified, counsel then asked for a continuance until the following morning so he could produce the witness. It is difficult to imagine what more counsel could have done to insure the presence of the witness.

In *Winkelman v. Allen,* 214 Kan. 22, 519 P.2d 1377 (1974), an action by a real estate broker to recover a commission, the court found that appellant had been prejudiced when the trial court refused to grant continuance when the appellant's expert witness could not get to town for the trial because of bad weather. The witness had not been subpoenaed because he was not a hostile witness and had volunteered to come without the issuance of a subpoena. The Supreme Court agreed with appellant's argument that the expert's testimony was crucial to his case and indicated a continuance should have been granted.

In the case at bar, when the defendant asked the court for a continuance he made a proffer of the testimony that Leroy Soverns would give. Assuming Leroy would have testified as expected his testimony was crucial to the defense and the failure to grant a continuance under the circumstances of this case constituted an abuse of discretion and prejudicial error.

The judgment of the trial court is reversed and the case remanded for a new trial.

FROMME, J., not participating.

McFARLAND, J., dissenting.