(691 P.2d 1311)
No. 56,182

STATE OF KANSAS, *Appellee,* v. MICHAEL C. CORRIGAN, *Appellant.*

Opinion filed December 14, 1984.

*Robert D. Hecht,* of Scott, Quinlan & Hecht, of Topeka, for the appellant.

*John K. Bork,* county attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before FOTH, C.J.; TERRY L. BULLOCK, District Judge Assigned; and FREDERICK WOLESLAGEL, District Judge Retired, Assigned.

FOTH, C.J.: Defendant Michael C. Corrigan appeals his jury conviction of arson. He contends he was denied a speedy trial and that hearsay evidence was admitted in violation of his Sixth Amendment right of confrontation.

The fire occurred on the morning of October 5, 1982, at a bait shop and general store owned and operated by defendant in Perry, Kansas. Defendant, his wife Janet, and their two-month-old child were in their mobile home near the bait shop when the fire was discovered.

Combined investigations by the State Fire Marshal's office and investigators from defendant's insurance company revealed, first, that the fire showed signs of an incendiary origin. Second, defendant had insured the shop and contents for a total of $35,000 in April, 1981, but that policy had expired in April, 1982,

and the premises were apparently uninsured until October 2, 1982. On that day, just three days before the fire, defendant took out a policy with a different company for $100,000. After the fire he made proof of loss under that policy.

In early November defendant's wife filed for divorce and moved into the home of her sister in Topeka. There, on November 4, she gave two statements to investigators. In them she related that defendant had stated a week before the fire that he was going to burn the shop because he needed money to repay loans from his father; that she saw him remove merchandise the day before the fire; and that he said he was going to burn the shop that night.

The same day a warrant was issued for defendant's arrest. When officers attempted to execute the warrant at his home, he fled on foot, eluding them after a lengthy chase despite repeated calls to stop and the firing of three warning shots. He surrendered two weeks later, and was released on bond. He has been free on bond ever since.

At the preliminary hearing of December 8, Janet Corrigan, who was again living with her husband, basically repudiated her prior statements to the investigators. He was nevertheless bound over for trial and arraigned on December 23, 1982. He was eventually brought to trial beginning August 15, 1983, was convicted, and now appeals.

## I. SPEEDY TRIAL

At the time of arraignment the case was set for trial on March 28, 1983. In February, at the State's request, it was reset for May 23, 1983. That continuance was granted because the State couldn't locate Janet Corrigan. Later, because a prior case was still in progress, the case was continued on the court's own motion to May 31, 1983. Both dates were well within the statutory 180-day period from arraignment, which would expire June 21, 1983.

On May 24 a hearing was held as a result of the State's continued inability to secure service of a subpoena on defendant's wife Janet. The subpoena had been issued in February and extensive efforts had been made to locate her but to no avail. From the substance of her statements outlined above, it is apparent that her evidence was highly material to the State's case. The trial court so found, and granted the State a continu-

ance to August 15, or 83 days. This continuance, which put the trial date past the 180-day limit, was expressly granted under K.S.A. 22-3402(3)(c). That statute allows trial courts to extend the statutory limit if:

"There is material evidence which is unavailable; that reasonable efforts have been made to procure such evidence; and that there are reasonable grounds to believe that such evidence can be obtained and trial commenced within the next succeeding ninety (90) days. Not more than one continuance may be granted the state *on this ground,* unless for good cause shown, where the original continuance was for less than ninety (90) days, and the trial is commenced within one hundred twenty (120) days from the original trial date . . . ." Emphasis supplied.

The defendant argues that the State was granted two continuances pursuant to K.S.A. 22-3402(3)(c), and that, because the original trial date was March 28, his trial had to begin within 120 days or no later than July 26.

The May 24 continuance, however, was not the second continuance ordered pursuant to 22-3402(3)(c). At the time of the first continuance, which moved the trial from March 28 to May 23, no findings under 22-3402(3)(c) were made, and the trial court later specifically stated that the continuance had not been granted under that subsection. Likewise, the continuance from May 23 to May 31 was because of the condition of the court's docket and was not ordered under 22-3402(3)(c).

The permissive extension provisions of K.S.A. 22-3402 do not apply to continuances which fix a trial date within the 180-day period. *Cf. State v. Coburn,* 220 Kan. 750, 752-53, 556 P.2d 382 (1976). In *Coburn,* the trial court ordered a 47-day continuance because of an overcrowded docket, which caused the trial to commence 196 days after arraignment. Coburn argued that he had not been tried within 180 days and that none of the exceptions in 22-3402(3) applied. Trial courts, under 22-3402(3)(d), may grant one continuance, of not more than 30 days, if a docket is too crowded to hold the trial within the statutory period. Coburn claimed that since the continuance was greater than 30 days, 22-3402(3)(d) was not satisfied. The Court rejected Coburn's argument, declaring that the 30-day requirement was intended to place a 210-day limit on bringing an accused to trial when he is on bond. The Court further ruled that "K.S.A. 22-3402 places no restrictions on continuances ordered within the applicable time limits for the commencement of a trial, regardless of

the length of the continuances or the reasons therefor." 220 Kan. 750, Syl. ¶ 1. Under *Coburn*, because the March 28 continuance did not postpone the trial's commencement beyond the 180-day period, 22-3402(3)(c) does not apply to that continuance. Because the continuance to August 15 was the first one ordered pursuant to 22-3402(3)(c), the trial did not have to commence within 120 days of March 28. For the purposes of this subsection, the "original trial date" from which the 120 days is to be computed was May 31, not March 28. The actual trial date of August 15 fell within both the 90-day limit for a first continuance and, obviously, the outside limit of 120 days which would have applied if there had been a second continuance on this ground.

The defendant also argues that because there were nearly 30 days remaining in the 180-day period when the trial court declared Janet Corrigan unavailable (at the May 24 hearing), the State should have commenced his trial during those remaining 30 days. This argument also has no merit. Once the trial court found 22-3402(3)(c) satisfied, it could continue the trial beyond the 180-day period. To what date a trial is continued rests largely within the discretion of the trial court. See *State v. Jones*, 226 Kan. 503, Syl. ¶ 5, 601 P.2d 1135 (1979). Considering the past difficulty in locating the witness, allowing as much time as possible for future effort was understandable. The trial court did not abuse its discretion by continuing the defendant's trial beyond the 180-day period. *Cf. State v. Petrin*, 213 Kan. 258, 261, 515 P.2d 748 (1973).

## II. HEARSAY

The hearsay admitted at trial comprised three separate declarations of the defendant's wife, Janet Corrigan, who did not testify at the trial. One was her testimony at the preliminary hearing of December 8, 1982. The other two were the statements made to Robert Schmidt, an insurance investigator, on November 4, 1982. One of these was tape-recorded and the other was given under oath before a court reporter. The latter two statements were taken in the Topeka home of Janet's sister, Deborah Hunter. Present at the first, in addition to Schmidt, were Janet, Deborah, their mother, and a deputy state fire marshal. At the second the state official was not present, but the court reporter and Janet's lawyer were added to the previous group.

All three declarations were admitted at trial upon a finding by the trial court that the defendant had procured the absence of the witness. If so, the defendant thereby waived his right of confrontation and *a fortiori* his hearsay objection to her statements. The principle is bottomed on the maxim that one should not profit from one's own wrongdoing. See, *e.g.*, *United States v. Thevis*, 665 F.2d 616, 632-33 (5th Cir.), *cert. denied* 459 U.S. 825 (1982) (grand jury testimony admissible where defendant had murdered the witness); *United States v. Balano*, 618 F.2d 624, 628-30 (10th Cir. 1979), *cert. denied* 449 U.S. 840 (1980) (grand jury testimony admissible where witness refused to testify because of defendant's threats); *United States v. Carlson*, 547 F.2d 1346 (8th Cir. 1976), *cert. denied* 431 U.S. 914 (1977) (grand jury testimony admissible where witness refused to testify because of defendant's threats); *United States v. Mayes*, 512 F.2d 637 (6th Cir.), *cert. denied* 422 U.S. 1008 (1975) (prosecutor's leading questions to witness who claimed privilege under the Fifth Amendment denied defendant his right of confrontation, but the right was waived because defense counsel asserted witness's privilege in the interest of the defendant and not of the witness). *Cf.* also *Motes v. United States*, 178 U.S. 458, 474, 44 L.Ed. 1150, 20 S.Ct. 993 (1900) ("We are unwilling to hold it to be consistent with the constitutional requirement that an accused shall be confronted with the witnesses against him, to permit the deposition or statement of an absent witness [taken at an examining trial] to be read at the final trial *when it does not appear that the witness was absent by the suggestion, connivance or procurement of the accused . . . .*" Emphasis added.); *State v. Lomax & Williams*, 227 Kan. 651, 661, 608 P.2d 959 (1980) (witness who testified at trial only that she didn't remember what happened was not "available for cross-examination," and prior preliminary hearing testimony was not admissible where there was "no finding by the trial court that the refusal of [the witness] to testify was the result of threats made to her by the defendants").

The question then becomes whether there was sufficient evidence before the trial court to support its finding that defendant procured the absence of his wife as a witness. The federal circuits are divided as to whether the prosecution must make such a showing by clear and convincing evidence (*Thevis*, 5th

Cir.), or merely by a preponderance of the evidence (*Balano*, 10th Cir.). We need not resolve that question in this case because we believe the evidence supports the trial court's finding under either standard.

Evidence relating to defendant's dealings with his wife came before the trial court at a series of hearings. Although the court made its first ruling on admissibility at a pretrial hearing when it might have been premature, later evidence, including that at trial, fully justified the ruling. In determining the sufficiency of foundation evidence we look at the entire record. *State v. Jackson*, 220 Kan. 675, 556 P.2d 885 (1976); *State v. Boone*, 220 Kan. 758, 556 P.2d 864 (1976).

The following facts were presented to the trial court, largely from testimony of Janet's sister Deborah Hunter.

Shortly after the fire, on about November 1, Janet left the defendant and went to live with her sister. A few days later she filed for divorce, and gave the two statements to the fire investigators.

Defendant then commenced a month-long series of telephone calls to Janet. In them he first merely urged her to return to him and to keep quiet about the fire. He later threatened that if she did not, he would take their newborn baby from her and have her committed to a mental institution. Finally, in a conversation on December 6, 1982, recorded by Deborah with Janet's knowledge and approval, he again urged her return. That conversation was presented to the jury and not objected to at trial. In it he also told Janet that if she testified and told the truth he would be sent to the penitentiary and she and the baby would have to survive on welfare.

That same day, Janet left her sister's house and went to live again with defendant. Two days later (December 8, 1982) she testified at the preliminary hearing, repudiating the statements she had made to Investigator Schmidt a month before.

On February 18, 1983, a hearing was to be held on the question of Janet's marital privilege. She did not appear; she was not at the Garden City address given on the subpoena for her. Defendant's bond was conditioned on his advising the court of his whereabouts; his latest advice was his parents' home in Garden City. The prosecutor advised the court of a report from the Finney County sheriff (at Garden City), which was that the

day before the hearing defendant's father said Janet wasn't there, and that he wouldn't tell the sheriff where she was. Defendant, who was present during counsel's relation of the events in Garden City, told the court that Janet had left Garden City three days before for a "vacation" in Oklahoma and Texas, and he had no idea where she was. He was careful to point out that she was not under subpoena when she left.

The State thereupon commenced a search for Janet in even more earnest. The sheriff went to Texas to search for her at the reported addresses of relatives; deputies checked the homes of her relatives and friends in Topeka; the sheriff put out "all points bulletins" on her supposed vehicle on interdepartmental wire services; and the sheriff even hired a private detective to watch her parents' home in Topeka.

At the May 24, 1983, hearing, evidence was introduced that in April defendant had recently been in contact with Janet, either in person or at least by telephone. This evidence consisted of defendant's statements to a friend describing his child's development. As the trial court found, these statements could only have come from a parent observing the child's development, or from conversation with the parent overseeing the development. In addition, he told his friend Janet was fine and "around," but declined to say where.

In summary: Defendant threatened his wife on numerous occasions in November and thereby secured her return to him and her turncoat testimony at the preliminary hearing; he admitted living with her from December 6 until just before the February 18 hearing, when she conveniently disappeared; and he gave every indication of knowing where she was in April. In addition, defendant's father also refused to say where she was although she was supposed to be living at his house.

We have no problem in finding that, contrary to defendant's assertion, the State made the required reasonable effort to produce the missing witness to justify a finding that she was "unavailable." We further conclude that the evidence before the trial court also justified its finding that defendant procured the absence of the potential witness, his wife Janet, and thereby waived his right to object to admission of her hearsay statements against him.

Affirmed.