No. 61,410

STATE OF KANSAS, *Appellee,* v. KENNETH GETTINGS, *Appellant.*

(769 P.2d 25)

Opinion filed January 20, 1989.

*Charles A. O'Hara*, O'Hara, O'Hara & Tousley, of Wichita, argued the cause and was on the brief for appellant.

*Mona Furst*, assistant district attorney, argued the cause, and *Clark V. Owens,*

district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: Kenneth Gettings, defendant, appeals from jury convictions of burglary and aggravated arson.

Gettings claims the trial court erred by: (1) admitting the statement of a deceased eyewitness based on Gettings' alleged procurement of the witness' death; (2) not declaring a mistrial when the State did not produce a prior taped statement of a prosecution witness until after the witness had been examined and cross-examined both at a pretrial hearing and before the jury; and (3) refusing to admit a ballistics report from Arkansas when the defense did not subpoena anyone to testify to the information in the report, and had a previous opportunity at the pretrial hearing to cross-examine a person who had such information.

We find no error and affirm.

## FACTS

Gettings' convictions were based on a fire which occurred in the Wichita apartment of Edward Ross, an acquaintance of his. Ross drank beer one evening with Gettings and with Kevin Whitley, Gettings' friend and employee. After taking Whitley home, Gettings and Ross drove to Ross' apartment.

Three or four weeks later, a friend told Ross that there had just been a fire in Ross' apartment and the police were looking for Ross. Ross saw Gettings and asked for a ride. Kevin Whitley was with Gettings again on that evening. Ross testified that Gettings was driving recklessly. Ross, a transvestite, saw a purse that he had left in his apartment earlier that evening sitting on the seat of Gettings' truck. Ross said that Gettings smelled like smoke. Ross finally asked Gettings to let him out because of the way Gettings was driving.

Ross, Gettings, and Whitley were ultimately questioned about the fire. Ross told the police he had seen Gettings and Whitley on the night of the fire. Gettings stated that he had not heard about the fire until he gave Ross a ride the night of the fire. Although Whitley said he knew nothing about the fire, he appeared to be nervous; consequently, the police asked him to come to the City Building. Whitley was interviewed by Captain Ernest Mower, a fire investigator for the Wichita Police Department, who had determined that the fire in Ross' apartment had

been intentionally set by the use of flammable liquid. There was evidence that a window in the apartment had been broken prior to the fire. Part of Whitley's interview was taped and later introduced into evidence at Gettings' trial. The introduction of the Whitley tape is a primary issue in this appeal.

Whitley's taped statement implicated Gettings in the arson. Whitley said on the tape that on the night of the fire he and Gettings were out driving around and drinking beer when Gettings pulled up at an apartment building. Whitley said he saw Gettings break out a window and enter an apartment; that when Gettings returned to the truck, he was carrying a black purse; and that flames were coming from the same window Gettings had entered.

As a result of Whitley's statement, burglary (K.S.A. 21-3715) and aggravated arson (K.S.A. 21-3719) charges were filed against defendant on September 26, 1986.

In January 1987, Kevin Whitley was found dead in a remote area of Carroll County, Arkansas. He had been shot in the head. The body was found near a cabin belonging to David Alway, a Wichita resident and friend of the defendant. There were perishable foods in the cabin, indicating someone had recently stayed there. When asked if he knew Gettings, Alway refused to answer on the grounds it might incriminate him. Gettings' son, James, testified that Gettings and Alway knew each other.

Following the discovery of Whitley's body, the State moved to admit Kevin Whitley's statement into evidence on the grounds that Gettings procured the death of Whitley. A full hearing on that motion and others were held before Judge Kennedy on May 7-12, 1987. Judge Kennedy found that the State had proved by a preponderance of the evidence that Gettings was involved in procuring the absence of Whitley. He also found that Whitley's statement was reliable because it was a declaration against penal interest. The motion was granted. The case came on for trial before Judge Cranmer, who indicated he would hear defendant's evidence in support of the defense motion in limine to suppress Whitley's statement but that he would probably follow the ruling of Judge Kennedy.

James Gettings testified at the pretrial hearing and during the jury trial that he could not remember statements and actions of his father which implicated his father in both the arson and

Whitley's death. This testimony contradicted a taped interview James had previously given police. During the pretrial hearing, the State had been ordered to produce statements and reports made in the case. After the trial had begun and James had already testified, the defense was provided with a taped interview of James that had been taken by Captain Mower during the course of Mower's investigation.

At this stage of the trial, the defense moved for a mistrial on the grounds that exculpatory evidence was not disclosed to the defense until after the witness had testified. The motion for mistrial was denied; however, the defense was permitted to recall James for cross-examination in support of its renewed motion in limine to suppress Whitley's statement.

The testimony and evidence presented at the hearing on the motion in limine and at trial will be discussed further as we analyze the issues in the case.

## 1. STATEMENT OF THE DECEASED EYEWITNESS

The statement of Kevin Whitley was the key evidence linking Gettings to the burglary and arson. Defense counsel, throughout the trial, strenuously objected to the admission of the taped statement. Gettings raises the admission of the Whitley statement as the main issue on appeal.

Gettings first argues the admission was improper because it violated his right to confrontation.

The Sixth Amendment to the United States Constitution and § 10 of the Bill of Rights of the Kansas Constitution provide criminal defendants with the right to confront witnesses against them. *State v. Lomax & Williams*, 227 Kan. 651, 657, 608 P.2d 959 (1980). A defendant, however, can waive the right to confrontation. "[W]hen confrontation becomes impossible due to the actions of the very person who would assert the right, logic dictates that the right has been waived. The law simply cannot countenance a defendant deriving benefits from murdering the chief witness against him." *United States v. Thevis*, 665 F.2d 616, 630 (5th Cir. 1982), *cert. denied* 459 U.S. 825 (1982).

We made a specific finding in *Lomax & Williams* that the witness' refusal to testify was not procured by the defendants; consequently, the procured absence issue has never been directly addressed by our court.

In *State v. Corrigan*, 10 Kan. App. 2d 55, 691 P.2d 1311 (1984),

*rev. denied* 237 Kan. 888 (1985), the Court of Appeals considered the question of whether the testimony of the defendant's wife at a preliminary hearing and two statements to an insurance investigator were admissible where there was evidence that the defendant procured his wife's absence at trial. The Court of Appeals held where there is sufficient evidence to support a finding that the defendant procured the absence of a witness, the defendant waives his right to confrontation and his hearsay objections to the previous statements by the witness. 10 Kan. App. 2d at 59.

Gettings also objects to the admission of Whitley's statement because it was hearsay. The State contends that the statement was a declaration against interest pursuant to K.S.A. 1987 Supp. 60-460(j). We need not address the hearsay issue because we adopt the reasoning of *Thevis,* 665 F.2d 616; *United States v. Balano,* 618 F.2d 624 (10th Cir. 1979), *cert. denied* 449 U.S. 840 (1980); and *Corrigan,* 10 Kan. App. 2d 55. These cases hold that a waiver of the right to confrontation based on the procurement of the absence of the witness also constitutes a waiver of any hearsay objections to prior statements of the absent witness.

## The Burden of Proof

"The Sixth Amendment does not stand as a shield to protect the accused from his own misconduct or chicanery." *United States v. Carlson,* 547 F.2d 1346, 1359 (8th Cir. 1976). In order to invoke the defendant's waiver of his right to confrontation, the State must prove that the defendant did procure the absence of the witness.

"The federal circuits are divided as to whether the prosecution must make such a showing by clear and convincing evidence (*Thevis,* 5th Cir.), or merely by a preponderance of the evidence (*Balano,* 10th Cir.). We need not resolve that question in this case because we believe the evidence supports the trial court's finding under either standard." *Corrigan,* 10 Kan. App. 2d at 59-60.

The standard of proof for the procurement of a witness' absence was discussed in *United States v. Mastrangelo,* 693 F.2d 269 (2nd Cir. 1982). The Second Circuit found that Mastrangelo's possible involvement in the witness' death raised the issue of whether Mastrangelo waived his Sixth Amendment rights, and *a fortiori,* his hearsay objection. 693 F.2d at 272. An evidentiary hearing in the absence of the jury is necessary before waiver can be found. 693 F.2d at 273. The evidentiary hearing is not an issue

in Gettings' case because there was a full hearing on the motion to admit Whitley's statement.

The *Mastrangelo* court moved on to consider which standard of proof should apply in such evidentiary hearings. Both *Thevis* and *Balano* were discussed.

"Moreover, the Supreme Court precedents are mixed. While the Court has held the preponderance of evidence test applicable to suppression hearings involving possible misconduct by the government [citations omitted], it has applied the clear and convincing standard to questions of admissibility involving constitutional requirements going to the reliability of evidence." 693 F.2d at 273.

*Mastrangelo* held that the burden of proof should be by a preponderance of the evidence:

"However, waiver by misconduct is an issue distinct from the underlying right of confrontation and not necessarily governed by the same rules concerning burden of proof. We see no reason to impose upon the government more than the usual burden of proof by a preponderance of the evidence where waiver by misconduct is concerned." 693 F.2d at 273.

*Mastrangelo* concurs with *Balano*, 618 F.2d 624, on the burden of proof in waiver by misconduct cases and on the proposition that waiver of the confrontation right also waives the right to hearsay objections. *Balano* arose from a conviction in United States District Court for the District of Kansas. We hold that where waiver by misconduct is an issue the State's burden of proof is a preponderance of the evidence.

Judge Kennedy found the evidence of Kevin Whitley's murder to be overwhelming. He also found the State had proved by a preponderance of the evidence that Gettings was involved in procuring the absence of Whitley. The trial court did not err in admitting the statement of Whitley, the deceased eyewitness.

## Reliability

Gettings argues the trial court must also find that the witness' statement was reliable. He claims that because Whitley's statement was unreliable, it should not have been admitted. Judge Kennedy made a specific finding that the statement was reliable. It was a statement against penal interest on the part of Whitley and there were statements by Gettings which corroborated Whitley's story. At the time Whitley was interviewed, he was a suspect in the arson. He was given *Miranda* warnings.

The State points out that Whitley could still have been charged with aiding a felon despite his claim that Gettings set the fire.

The defense points to the general untrustworthiness of ac-

complice testimony. See *State v. Moore,* 229 Kan. 73, 622 P.2d 631 (1981). In *Mastrangelo, Thevis, Balano,* and *Corrigan,* the prior statement of the unavailable witness was *sworn. Mastrangelo, Thevis,* and *Balano,* dealt with grand jury testimony. In *Corrigan,* one of the statements was the wife's testimony at the preliminary hearing and the other two statements were made to an insurance investigator, one with a court reporter and the wife's attorney present. 10 Kan. App. 2d at 58.

The jury in Gettings' case was given the following instruction:

"A person who is in the company of a defendant when such defendant is alleged to have committed a crime may identify such defendant as the person who committed the crime. However, you should consider with caution, an unsworn statement made by such person if such unsworn statement is not supported by other evidence and such person is arrested and interrogated concerning such crime."

In *Thevis,* the court indicated that stringent reliability standards need not be met where the defendant has waived the right to confrontation. 665 F.2d at 629-30. Other testimony corroborated parts of Whitley's statement. Gettings was able to cross-examine Captain Mower, who took the statement. The jury was given a cautionary instruction. It was not error to admit Whitley's statement.

## 2. THE PRIOR TAPED STATEMENT
## OF A PROSECUTION WITNESS

James Gettings, the defendant's son, was a key prosecution witness at both the hearing to admit Whitley's statement and at trial. In March of 1987, two months before trial in this case, James had been arrested on auto theft charges. During the course of the interrogation, officers asked James if he had any knowledge of his father's involvement in a murder that occurred in Arkansas. James had been read his *Miranda* rights and had waived them. James then told the officers about incriminating statements his father had made concerning the arson and Whitley's murder.

Detective Michael Keller of the Wichita Police Department testified during the hearing to admit Whitley's statement and at trial as to the March 1987 statement he took from James Gettings. James told Keller that the defendant admitted setting the fire and said that he (the defendant) should have shot Ross because Ross was a transvestite. James also expressed concern about what

would happen if his father or his father's wife found out James was talking to the police. James also told Keller that he had heard his father tell his wife (the defendant's) that they would never find the gun and that they did not have any evidence on him now that Whitley was dead.

At both the hearing to admit Whitley's statment and at trial, James testified that he could not remember the above statements. In April of 1987, Tom Achemire, an investigator with the State Fire Marshal's Office, contacted James about an unrelated arson in Harper County. James told Achemire that his father had made threats against him. Achemire contacted Captain Mower. The next day, Mower and Achemire taped an interview with James concerning the threats by his father. Both Achemire and Mower testified that no deal was made with James Gettings. James then testified that he had lied when he told Achemire and Mower that he had been threatened. He also testified that his father said that he, (defendant) was innocent. There was evidence that the defendant was making menacing gestures to James while James was testifying.

The taped statement at issue was made less than two weeks prior to the trial. Captain Mower testified that he had not yet had time to prepare a full transcript of the tape and to check the transcript against the recording for errors. No reference to a defense request for discovery is noted in the record. Gettings argues that the judge ordered all discovery be made available to the defense. The State argues that defense counsel had requested notes or reports of Whitley's interview. Mower testified that he did not wish to give an incomplete report to the defense and that the prosecutor did not have knowledge that the statement had been taped. From a review of the record, it does not appear that the State acted in bad faith.

"Generally the trial court has broad discretion in dealing with a party who has failed to comply with a discovery and inspection request, and the trial court's decision will only be set aside upon a showing of abuse. [Citations omitted.] Moreover, evidence not disclosed to the defendant before trial is not suppressed or withheld by the State if the defendant has personal knowledge thereof, or if the facts become available during trial and he is not prejudiced in defending against these new facts." *State v. Cook,* 225 Kan. 259, 261, 589 P.2d 616 (1979).

In both *State v. Ruebke,* 240 Kan. 493, 731 P.2d 842 (1987) and *State v. Jackson,* 226 Kan. 302, 597 P.2d 255 (1979), we held that the trial court did not abuse its discretion in refusing to declare a

mistrial where certain police reports did not surface until the trial was underway. In both cases, there was a discovery order in effect.

"When the withholding of evidence by the prosecution is not deliberate and in bad faith and when the prosecution has not refused to honor a request for the evidence made at a proper stage of the proceedings, the defendant should be granted a new trial only if the record establishes: (1) that evidence was withheld or suppressed by the prosecution, (2) that the evidence withheld was clearly exculpatory, and (3) that the exculpatory evidence withheld was so material that the withholding of the same from the jury was clearly prejudicial to the defendant." *State v. Kelly,* 216 Kan. 31, 36, 531 P.2d 60 (1975).

The taped statement of James Gettings does not meet the clearly exculpatory test stated in *Kelly.*

The trial court did not abuse its discretion in refusing to order a mistrial.

### 3. THE ARKANSAS BALLISTICS REPORT

Judge Kennedy found Whitley had been shot with a large caliber gun and that Gettings owned either a .45 caliber or a 9 millimeter handgun. James Gettings had stated his father owned a lot of guns. After a pretrial ruling to admit Whitley's statement, Gettings moved for a rehearing. One of the stated reasons for the motion was that the ballistics report from the Arkansas State Police indicated Whitley was killed with a .38 caliber bullet and that the gun owned by Gettings could not have been the murder weapon. The judge pointed out there had been a witness at the hearing who could have testified as to the caliber of the murder weapon. Defense counsel had not questioned any of the witnesses from Arkansas about the murder weapon. Judge Kennedy denied the motion for rehearing.

Fahmi Malak, Chief Medical Examiner in the Arkansas State Police crime lab, and two officers from the Carroll County Sheriff's Office testified at the pretrial hearing. At trial, defense counsel proffered a copy of the Arkansas ballistics report. The State objected, arguing the report was hearsay. Defense counsel stated Gettings did not have the funds to bring in a witness from Arkansas. There was no showing Gettings was indigent. The judge refused to admit the ballistics report and refused to authorize funds to finance a second trip to Wichita for an Arkansas witness.

A state does not have the duty to provide a defendant with

technical pretrial assistance. See *Smith v. Baldi,* 344 U.S. 561, 568, 97 L. Ed. 549, 73 S. Ct. 391 (1953).

The defense did not attempt to argue that the report should have been admitted in under one of the exceptions to the hearsay rule. The defense had a chance to question Dr. Malak concerning the type of bullet that killed Whitley. The fact the gun found at Gettings' residence could not have been the murder weapon does not preclude a finding that Gettings procured the death of Whitley. The court's decision to deny funds to bring a witness from Arkansas was not an abuse of discretion.

Affirmed.