**Kenneth Ernest GETTINGS, Petitioner,**

v.

**David MCKUNE, Warden, Lansing Correctional Facility,**

**and**

**Carla Stovall, Kansas Attorney General, Respondents.**

No. 96–3227–DES.

United States District Court,
D. Kansas.

Feb. 22, 2000.

---

Kenneth Ernest Gettings, Lansing, KS, William K. Rork, Rork Law Office, Topeka, KS, for Kenneth Ernest Gettings, petitioner.

Jared S. Maag, Office of Attorney General, Topeka, KS, for David (NMN) McKune, respondents.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter comes before the court on review of Magistrate Judge Walter's Report and Recommendation (Doc. 35) on a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner has filed objections to the Report and Recommendation. For the following reasons, the court accepts and adopts the findings and conclusions of the Report and Recommendation.

### I. PROCEDURAL HISTORY

The Report and Recommendation summarized the procedural history of this case as follows:

In 1987 petitioner was convicted by a jury of burglary and aggravated arson in Sedgwick County District Court. Petitioner appealed his conviction to the Kansas Supreme Court claiming (1) he was denied his right to confront a witness against him; (2) the prosecution failed to provide material as required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (3) the trial court improperly denied funds to the defendant that would have enabled him to bring a witness to Wichita from Arkansas. His claims were denied and the Supreme Court affirmed his conviction. *State v. Gettings,* 244 Kan. 236, 769 P.2d 25, 31 (1989). The same attorney served as both petitioner's trial and appellate counsel.

Next, petitioner sought to correct his sentence as illegal and the Kansas Court of Appeals affirmed the denial of such motion. Petitioner then filed a petition for habeas corpus with the Kansas Supreme Court under K.S.A. 60–1501. The Kansas Supreme Court summarily denied the petitioner. Petitioner filed a Petition for Writ of Certiorari in the United States Supreme Court which was also denied. Subsequently, petitioner filed a petition for a writ of habeas corpus in the United States District

Court of Kansas. The petition was denied due to petitioner's failure to exhaust his state remedies.

Petitioner filed a motion for post-conviction relief pursuant to K.S.A. 60–1507 alleging a total of twelve errors and a separate claim alleged that his appellate counsel was ineffective for failing to provide a sufficient record on appeal. In ruling on the K.S.A. 60–1507 motion, the state trial judge denied all of petitioner's claims. The eleven claims, the state trial judge stated, were errors that could have been raised on direct appeal. The twelfth claim was considered upon its merits and denied.

From that decision, petitioner appealed to the Kansas Court of Appeals, claiming the same twelve violations and, in addition, adding a thirteenth claim that the state trial judge failed to appoint counsel and hold a hearing upon his K.S.A. 60–1507 motion. The court eventually denied all of petitioner's claims in an unpublished opinion, albeit on different grounds. See *State v. Gettings*, No. 72,964 (Kan.Ct.App. Aug. 11, 1995).

Once more, Gettings appealed to the Kansas Supreme Court for review. The Supreme Court declined to review this matter.

The petition filed herein asserts the following claims:

1. Petitioner was denied his Sixth Amendment right to confront adverse witnesses by the trial court's admission of the statement of Kevin Whitley;

2. Petitioner was denied a fair trial when the trial court failed to grant a mistrial, predicated upon a *Brady* violation; and

3. His appellate counsel was ineffective in failing to (a) provide a proper record for Defendant's attorney for the *Brady* issue presented on appeal; and (b) raise all trial errors of constitutional magnitude.

Issues (1) and (2) were presented to and denied by the Kansas Supreme Court. *See State v. Gettings*, 244 Kan. 236, 769 P.2d 25 (1989). The procedural issue in number three is complicated and will be discussed in greater detail below.

After discussing the relevant case law and the arguments of the petitioner, Magistrate Judge Walter concluded that all three of petitioner's claims lacked merit. Therefore, Magistrate Judge Walter recommended that petitioner's habeas corpus petition be dismissed and all relief denied.

## II. FACTUAL BACKGROUND

Gettings was convicted by a jury of burglary, in violation of Kan.Stat.Ann. § 21–3715, and aggravated arson, in violation of Kan.Stat.Ann. § 21–3719, based on a fire which occurred in the Wichita apartment of Edward Ross. Edward Ross was an acquaintance of Gettings. The two men met at the Town and Country and drank together one evening. Edward Ros ("Ross") was dressed as a woman, but informed Gettings he was a man. Kevin Whitley ("Whitley"), Gettings' friend and employee, also drank with the two men. At the end of the evening, Gettings drove Whitley to his home, which was in the same trailer park where Gettings lived. Gettings then drove Ross to his apartment, and Gettings fell asleep on Ross's couch.

A few weeks later, Ross was at the Town and Country when a clerk informed him there had been a fire in his apartment and the police were looking for him. Ross saw Gettings and Whitley and asked Gettings for a ride. Gettings was driving a dark blue or black Chevrolet pick-up truck. Ross testified that Gettings was driving recklessly, smelled of smoke, and was not wearing a shirt. Ross saw a black purse which he identified as one he left in his apartment laying on the seat of Gettings' truck. Because Gettings was driving recklessly, Ross asked him to let him out. Whitley drank a beer and said nothing during the ride.

A fire investigator determined that the fire started in Ross's apartment and had intentionally been set with flammable liq-

uid. He also determined that a window had been broken prior to the fire. Ross, Gettings, and Whitley were all questioned about the fire by the police. Ross described seeing Gettings and Whitley on the night of the fire. Gettings initially denied even knowing Ross, but then admitted he did but was ashamed because Ross was a transvestite. Gettings claimed not to know anything about the fire until he gave Ross a ride in his Firebird. Whitley denied any knowledge about the fire, but said he had given two people a ride in Gettings' truck. Whitley appeared extremely nervous, so the police took him to the police station.

Whitley was read his *Miranda* rights and interviewed by Captain Ernest Mower, a fire investigator for the Wichita Police Department. Part of the interview was taped, and later admitted into evidence at Gettings' trial. On the tape, Whitley claimed that on the night of the fire he and Gettings were driving around and drinking beer. Gettings told him he was going to burn Ross's apartment. Gettings pulled up at the apartment building, took off his shirt and wrapped it around his hand. Whitley said he saw Gettings break a window and enter an apartment. When Gettings returned to the truck, he was carrying a black purse. Whitley also said he saw flames coming from the same window Gettings had entered. Whitley said the two men then went to the Town and Country where they saw Ross and gave him a ride. As a result of Whitley's taped statement, Gettings was charged with burglary and aggravated arson on September 26, 1986.

On January 30, 1987, Whitley was found dead in a remote area of Carroll County, Arkansas. He had been shot once through the head from a short distance with a large caliber gun. Whitley was last seen by his wife on January 15, 1987. He told her he was going on a hunting trip, and he was driving Gettings' truck. The body was found near the cabin of David Alway ("Alway"), a friend of Gettings. The police searched the cabin, and discovered perishable food items, indicating someone had recently stayed there. A McDonald's bag was found by the door of the cabin. McDonald's sugar packs were on the victims's body, and McDonald's napkins were found about thirty feet from the body. The police questioned Alway. When asked if he knew Gettings, Alway refused to answer because it might incriminate him. Getting's son testified that Gettings and Alway knew each other.

In March, petitioner's son, James Gettings, was arrested for car theft. The state offered James a deal if he would cooperate and tell them everything he knew about the arson and the death of Whitley. James gave several incriminating statements to Detectives Keller, Heinrich and Hammond.[1] James later claimed these statements were false and the result of his desire to get a deal.

Michelle Fondren testified that she had asked Gettings if he killed Whitley and he refused to answer. Gettings asked her what she would do if there was a witness against her and she could go to jail forever. He also told her that Whitley had set the fire and blamed him, but Whitley was the only witness who could testify against him.

The state filed a motion in Limine, requesting that Whitley's taped statement given to the police be allowed into evidence at Gettings' trial. At the hearing, petitioner's son, James Gettings, testified that he could not remember statements he made to the police which implicated his father in both the arson and Whitley's death. The

---

1. James told the police that petitioner: (1) showed James and Cindy, petitioner's wife, a newspaper clipping about the arson; (2) admitted he set the fire, but said he should have shot the transvestite instead; (3) recorded the news describing the death on all three channels; (4) identified "Dave's cabin" when the news had a map of Arkansas with a marker where the body was found; (5) said Whitley ratted on him; (6) claimed it was the "damndest case of suicide" he'd ever seen; and (7) there was no way was to link him to the arson if Whitley was dead.

trial court found that: (1) the State had proved by a preponderance of the evidence that Gettings was involved in procuring the death of Whitley; and (2) Whitley's statement was reliable because it was a declaration against penal interest. The motion was granted.

During the pre-trial hearing, the State was ordered to produce all statements and reports in the case. After the trial started and James Gettings had testified, the State produced a taped statement made by James Gettings to Captain Mower in April. The statements contained in the tape did not include some of the incriminating statements made by James Gettings during the earlier interview with Detective Keller. As a result, the defense moved for a mistrial on the grounds that exculpatory evidence was not disclosed. The motion was denied, but the trial court allowed the defense to recall James Gettings. At the conclusion of the evidence, a jury convicted Gettings of burglary and aggravated robbery.

## III. STANDARD OF REVIEW

The standard for district court review of a magistrate judge's report and recommendation is contained in 28 U.S.C. § 636(b)(1), which provides as follows:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1). As stated in the Code, the district court must make a *de novo* determination regarding the portions of the report and recommendation to which objections have been filed. *Id.*

Petitioner does not object to the federal habeas standard of review as stated in the Magistrate Judge's report and recommendation. This court will make a de novo review of the report and recommendation applying that standard.

## IV. DISCUSSION

### A. Whitley's Statement

Petitioner's first objection to the Report and Recommendation is that Magistrate Judge Walter incorrectly determined that Whitley's statement was admissible despite his hearsay objection that the statement was unreliable.

The Supreme Court has recognized that the defendant can waive his Sixth Amendment right of confrontation by his own misconduct. *Snyder v. Massachusetts*, 291 U.S. 97, 106, 54 S.Ct. 330, 78 L.Ed. 674 (1934). "The Sixth Amendment does not stand as a shield to protect the accused from his own misconduct or chicanery." *United States v. Carlson*, 547 F.2d 1346, 1359 (8th Cir.1976). The defendant can not assert his Confrontation Clause rights if the witness's absence is procured by the defendant himself. *United States v. White*, 116 F.3d 903 (D.C.Cir. 1997) (defendant who murdered the witness waived right to confrontation clause). "To permit the defendant to profit from such conduct would be contrary to public policy, common sense and the underlying purpose of the confrontation clause." *Carlson*, 547 F.2d at 1359.

Because the trial court found that Gettings procured Whitley's absence by a preponderance of the evidence, Gettings could not base his objection to the admittance of Whitley's statement on the Confrontation Clause. *See United States v. Balano*, 618 F.2d 624 (10th Cir.1979) (applying preponderance of the evidence standard). However, once the statement is determined to have cleared the Confrontation Clause hurdle, there remains the issue of whether the statement is subject to hearsay objections. The petitioner argues that the court had to find Whitley's statement reliable.

Some courts require the absent witness' statement to have the necessary indicia of

trustworthiness and reliability. These courts focus on the absent witness's statement as an exception to hearsay, which requires the statement to be reliable. *See Carlson,* 547 F.2d at 1353–55 (requiring witness's statements comply with 804(b) even though defendant procured witness absence). Other courts require a finding of reliability based on Federal Rules of Evidence 403(1) because the statements "probative value may well be outweighed by the unfair prejudice resulting from unreliability." *See United States v. Thevis,* 665 F.2d 616, 632 n. 17 (5th Cir.1982).

■ Both Kansas courts and the Tenth Circuit view the absent witness's statement as a waiver rather than an exception to the hearsay rules. *Balano,* 618 F.2d at 626; *State v. Corrigan,* 10 Kan.App.2d 55, 691 P.2d 1311 (1984). "A valid waiver of the constitutional right [of confrontation] is a fortiori a valid waiver of an objection under the rules of evidence." *Balano,* 618 F.2d at 626. In *Corrigan,* the defendant threatened and intimidated his wife so she would change her testimony and hid from authorities. At trial, the court admitted three statements made by the absent wife. The Kansas Court of Appeals stated, "All three declarations were admitted at trial upon a finding by the trial court that the defendant had procured the absence of the witness. If so, the defendant thereby waived his right of confrontation and a fortiori his hearsay objection to her statements." *Corrigan,* 691 P.2d at 1314. A waiver of the right to Confrontation waives the right to hearsay objections.

Petitioner tries to distinguish Whitley's statement from those in *Balano* and *Corrigan* because they were taken under oath, which is indicative of trustworthiness. This court does not read the decisions of *Balano* and *Corrigan* as turning on whether the statements were taken under oath. First, these decisions do not discuss the reliability of the statements. Second, although *Balano* involves grand jury testimony, one of the three statements in *Corrigan* was not taken under oath. *Corrigan,* 691 P.2d at 1314 (one of

the statements made to the insurance investigator was simply tape-recorded).

■ Several courts have rejected the requirement of a specific finding of reliability. *See United States v. Houlihan,* 92 F.3d 1271, 1281 (1st Cir.1996); *White,* 116 F.3d at 913; *Steele v. Taylor,* 684 F.2d 1193, 1202 (6th Cir.1982). A waiver of a defendant's right to confrontation and right to hearsay objections renders "a special finding of reliability superfluous." *Houlihan,* 92 F.3d at 1281. As the Sixth Circuit stated:

> A prior statement given by a witness made unavailable by the wrongful conduct of a party is admissible against the party if the statement would have been admissible had the witness testified. The rule ... is based on a public policy protecting the integrity of the adversary process by deterring litigants from acting on strong incentives to prevent the testimony of an adverse witness. The rule is also based on a principle of reciprocity similar to the equitable doctrine of "clean hands." The law prefers live testimony over hearsay, a preference designed to protect everyone, particularly the defendant. A defendant cannot prefer the law's preference and profit from it ... while repudiating that preference by creating the condition that prevents it.

*Steele,* 684 F.2d at 1202. "The government should be no worse off than if defendants had not murdered [the witness]" regardless of whether the witness's statement was under oath, at a judicial proceeding, or merely to an investigator at a police station. *See White,* 116 F.3d at 913.

■ In addition, the state court made a specific finding that the statement was reliable. At the time Whitley was interviewed, he was a suspect in the arson and had been given Miranda warnings. The court found that the statements were against penal interest. Petitioner argues that the statements were exculpatory rather than inculpatory. The Supreme Court

has said that statements against penal interest are reliable only if the statements are self-inculpatory. *Williamson v. United States,* 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). The Kansas court recognized that Whitley's statements could have led to a charge against him of aiding a felon. Gettings' own statements corroborated part of Whitley's story. The jury was given a cautionary instruction. The defense was also able to cross-examine the investigator who took the statement. The statements were sufficiently reliable to pass constitutional scrutiny.

The court finds that the Report and Recommendation adequately and correctly determined this issue. The court will, therefore, adopt Magistrate Judge Walter's findings on this issue.

### B. *Brady* Violations

The second objection to the Report and Recommendation is that Magistrate Judge Walter incorrectly found that the evidence suppressed by the state was not exculpatory or material. The State improperly withheld the April 30, 1987, recorded statement of James Gettings taken by the police. The recorded statement was not made available until several days into the trial after James Gettings had testified. The trial court allowed petitioner to reopen the motion in limine to suppress Whitley's statement and to recall James Gettings to the stand.

 To establish a *Brady* violation, the petitioner must prove that [1] the prosecution suppressed the evidence, [2] the evidence would have been favorable to the accused, and [3] the suppressed evidence was material. *Moore v. Reynolds,* 153 F.3d 1086, 1112 (10th Cir.1998). Evidence is exculpatory when it is inconsistent with the prosecution's case or tends to support the defendant's case. *See Stafford v. Ward,* 59 F.3d 1025, 1027–28 (10th Cir. 1995). The suppressed statement was not exculpatory merely because it did not include all the statements made to law enforcement in a previous interview. There were only two statements excluded from

Detective Keller's recitation of his March interview with James Gettings: "they'll never find the gun" or "that's the damndest case of suicide that I ever saw." This provides minimal impeachment value. The April statement, as a whole, overwhelmingly incriminated the petitioner and did not tend to support the defendant's case. Magistrate Judge Walter correctly determined that the statement was not exculpatory.

 The court also agrees that the suppressed statement was not material. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A reasonable probability is a probability sufficient to "undermine confidence in the outcome." *Id.* The court must determine materiality on the basis of the entire record, considering all of the undisclosed evidence collectively. *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). The evidence against the petitioner was overwhelming. We agree with Magistrate Judge Walter that had the defendant been given the statement sooner, the outcome of the case would not be different.

### C. Ineffective Assistance of Counsel

#### 1. Procedural History of Ineffective Assistance of Counsel Claim

Magistrate Judge Walter discussed the procedural history of this claim in her Report and Recommendation as follows:

Upon Judge Saffels' dismissal of petitioner's initial § 2254 petition, petitioner filed a motion pursuant to K.S.A. 60–1507 ("1507 motion") with the Sedgwick County District Court. The 1507 motion presented the following issues:

[1] The court erred in not granting mistrial when prosecution solicited highly prejudicial alleged statement of petitioner solely to inflame the

emotions of jury and denied petitioner's constitutional rights of due process and a fair trial.

[2] Petitioner's rights to due process were denied when prosecutor called and tendered witness for examination whose testimony he knew and argued to the Court as being false.

[3] The Court erred in not granting mistrial when petitioner was denied his constitutional right of confrontation of alleged hearsay statement of James Gettings used as substantive evidence without a finding by the Court that statement possessed any indicia of reliability or trustworthiness when the statement was entered by leading questions.

[4] Prosecutor's outrageous misconduct in calling witnesses for the sole purpose of entering by leading questions prior hearsay statements by the guise of impeachment and denied the Petitioner the constitutional right of effective cross-examination and the right to a fair trial and due process.

[5] Petitioner was denied confrontation of witness Detective Keller who testified to multiple hearsay statement of what someone had told him allegedly what someone else had said.

[5a] Petitioner was denied confrontation of witness of Detective Heinrichs who testified to alleged multiple hearsay statement of what Betty Gettings had told him that the Petitioner had told her.

■ Court abused its discretion in not granting mistrial when prosecution introduced non jury issues and evidence of other crimes and unrelated criminal investigation to jury after hiding prior statement of witness for sole purpose to either mistry case or to prejudice and maliciously deny petitioner's right of fair trial and due process.

[7] Petitioner was denied confrontation and cross-examining witness concerning tainted statement intro-duced and argued to jury as relevant to its inquiry.

[8] Court's abuse of discretion and Prosecution's malicious over-reaching during closing arguments denied Petitioner a fair trial and due process.

[9] Petitioner's rights to a fair trial were violated by prosecutorial misconduct and the Trial Court's abuse of discretion in admitting irrelevant issues not contained in the information creating a variance of evidence for the jury to decide the guilt or innocence of the Petitioner on. The introduction of evidence not relevant to the fact in the information so prejudiced the Petitioner and surprised the defense, precluding preparation to counter extrinsic evidence of the other alleged crimes, creating a probability that the jury could had based its verdict upon evidence of the other crimes not included in the information and in the instructions.

[10] The Petitioner was denied Due Process by deficient appellate counsel's deficiently perfecting his direct appeal and the State's intentional misstatement of the facts supporting the claim that the State failed to disclose exculpatory impeachment evidence that went directly to the motion of finding waiver of the accused's constitutional right of confrontation.

[11] State's admitted case theory asked the jury to base its verdict upon the inference based on presumption of the correctness of two corroborating statements insufficient to sustain conviction of burglary alone and not the aggravated arson and jury was instructed on the INFERENCE OF INTENT instruction shifting the burden of proof of defense.

The state district court judge denied Issue 10 on the merits. Petitioner's re-

maining claims were denied because they could have been but were not raised on direct appeal.

Petitioner appealed the denial of his 1507 motion. His appellate brief expanded the ineffective assistance claim to include appellate counsel's failure to raise issues on appeal (*see* ¶¶ 40–42 of Petitioner's Brief on Appeal).

The Court of Appeals affirmed the trial court's decision on different grounds. With respect to counsel's failure to include within the record on direct appeal a copy of a discovery request and related references to the trial court record, the Court of Appeals rejected petitioner's claim based upon the very same conduct of which petitioner complains, i.e., his failure to include a transcript of his trial or a copy of the discovery request.

The newly asserted claim that counsel was ineffective for failing to raise additional issues on appeal was rejected as merely conclusory. While recognizing that ineffective assistance of counsel may excuse a defendant's failure to raise an issue on direct appeal, the court found petitioner's conclusory allegation insufficient to demonstrate the exceptional circumstances required by Supreme Court Rule 183(c)(3).

Because the Court of Appeals declined to hear the merits of petitioner's claims due to a procedural default, this Court may likewise be without authority to do so. *See Swazo v. Shillinger,* 932 F.Supp. 1350, 1354 (D.Wyo.1996).

## 2. Analysis

### a. Initial Ineffective Assistance of Counsel Claim

In his 1507 motion, petitioner claimed he was denied effective assistance counsel in connection with his direct appeal by counsel's failure to provide a sufficient record on appeal with respect to the prosecution's belated production of the April 30, 1987, taped statement of James Gettings. The Kansas Court of Appeals held that petitioner's failure to supply a sufficient appel-late record precluded any inquiry into the merits of his claim. Petitioner again asserted this claim in his 2254 petition. Respondents raised the issue of procedural default in response to the petition. Magistrate Judge Walter found that federal habeas review of this claim was barred.

 Federal habeas review of claims defaulted in state court pursuant to an independent and adequate state procedural rule is barred "unless the petitioner can demonstrate cause for his default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A state procedural ground is independent if it relies on state law rather than federal law and is adequate if it is regularly followed and applied evenhandedly to all similar claims. *Hickman v. Spears,* 160 F.3d 1269, 1271 (10th Cir.1998) (quoting *English v. Cody,* 146 F.3d 1257, 1259 (10th Cir.1998)). It is well established in Kansas that it is the duty of the appellant to supply the record on appeal and include in the record any matter that he intends to claim error. *Fletcher v. Nelson,* 253 Kan. 389, 855 P.2d 940, 943 (1993) (holding that failure of habeas petitioner to supply the record on appeal supports denial of claim); *State v. Lumley,* 25 Kan.App.2d 366, 963 P.2d 1238, 1242 (1998); *Gladney v. Sheriff of Leavenworth County,* 3 Kan.App.2d 568, 598 P.2d 559, 560 (1979). Therefore, petitioner is not entitled to relief unless he can show cause for the default and prejudice resulting from the violation of federal law.

 Magistrate Judge Walter correctly found that petitioner has failed to show cause to excuse the procedural bar. In his memorandum objecting to the report and recommendation, petitioner appears to argue that he is excused because he was proceeding pro se at the time he appealed the denial of his 1507 motion. The Tenth Circuit has stated that a petitioner's "pro se status and corresponding lack of aware-

ness and training on legal issues do not constitute adequate cause" under the cause and prejudice test. *Rodriguez v. Maynard*, 948 F.2d 684, 688 (10th Cir.1991) (citing *Smittie v. Lockhart*, 843 F.2d 295, 298 (8th Cir.1988)). Petitioner has not shown cause for the procedural default.

Failure to show cause may nonetheless be excused if petitioner can show that a fundamental miscarriage of justice would result from the court's failure to review his claims. *Rodriguez*, 948 F.2d at 688. Magistrate Judge Walter found that petitioner failed to assert any grounds alleging a fundamental miscarriage of justice. Likewise, in his objections, petitioner did not come forward with any evidence to support his argument that a fundamental miscarriage of justice would result. Because petitioner has failed to establish cause to excuse his default or demonstrated a fundamental miscarriage of justice, this court adopts the findings in the report and recommendation and denies petitioner's request for federal habeas relief.

**B. Ineffective Assistance of Counsel Claim Based upon Counsel's Failure to Raise Various Issues on Appeal.**

Petitioner raised several additional claims of ineffective assistance of counsel to the Kansas Court of Appeals. The court found that petitioner failed to present the additional claims within his 1507 motion. The court also found the conclusory manner in which the claims were presented was insufficient to establish the exceptional circumstances required to excuse the failure to raise the claimed evidentiary rulings on direct appeal. Because of the procedural default, no Kansas court has addressed whether appellate counsel was ineffective for failing to raise the additional issues on appeal. Petitioner objects to Magistrate Judge Walter's findings as to six of the claims of ineffective assistance of appellate counsel.

Respondents did not raise the procedural default issue in connection with this ineffective assistance of counsel claim.

Therefore, respondents have waived the procedural default defense. *Jenkins v. Anderson*, 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). The court agrees with Magistrate Judge Walters that there are no circumstances present to justify raising the issue of procedural default sua sponte. *United States v. Allen*, 16 F.3d 377, 378–79 (10th Cir.1994). Therefore, the court will evaluate each of the six ineffective assistance of council claims on the merits.

The Sixth Amendment guarantees criminal defendants the right of effective assistance of counsel. *See generally Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, the petitioner must show: (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defense in that the outcome would have been different but for the deficiency. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. In order to show "that counsel's performance was deficient," the petitioner must show that his attorney's conduct fell outside the wide range of competence demanded of an attorney in a criminal case. *See United States v. Carr*, 80 F.3d 413, 417 (10th Cir.1996). In order to show "that the deficient performance prejudiced his defense," the petitioner must show that there is a "reasonable probability that, but for the alleged errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

In addition to creating the two-prong test in *Strickland*, courts have established general guidelines for evaluating ineffective assistance of counsel claims. Judicial scrutiny of counsel's performance starts with the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. Determining which issues to raise on appeal requires counsel to exercise professional judgment. "It is completely reasonable,

and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed." *Jackson v. Shanks,* 143 F.3d 1313, 1321 (10th Cir.1998). The court will not find failure to raise a colorable issue on appeal ineffective unless the omitted issue would have been a "dead bang winner." *United States v. Cook,* 45 F.3d 388, 395 (10th Cir.1995).

■ **Claim 1.** Petitioner objects to Magistrate Judge Walters' finding that he was not prejudiced by the admission of a statement by Edward Ross. During direct examination, Ross was asked, "And why didn't you try to take [the purse] with you when you got out of the truck?" Ross responded, "Because before I got out, Mr. Gettings had already—had talked to Kevin about shooting at officers of the law." The trial judge initially indicated the statement would be stricken, but allowed the statement in as evidence that the purse was in the truck.

Even if admitting the statement was improper, petitioner has not shown that he was prejudiced by the statement. Petitioner argues that "the result would have been different because the jury was inflamed and could have convicted this Petitioner on this statement alone." However, a discussion about shooting at police officers has nothing to do with arson. The evidence presented at trial connecting Gettings with the arson was overwhelming. The court agrees with Magistrate Judge Walter that if appellate counsel had raised the issue on appeal, it would not have resulted in a reversal.

**Claim 2.** Petitioner claims that Magistrate Judge Walter improperly determined that he was not prejudiced by counsel's failure to argue on appeal that admitting James Gettings' statements containing alleged confessions by petitioner into evidence denied his right to confrontation. Detective Keller questioned James Gettings about his father prior to questioning James Gettings about unrelated charges. James Gettings made statements implicating his father in both the arson and the

murder of Kevin Whitley. The statements were not sworn or recorded.

Petitioner claims these statements are unreliable hearsay and violate his constitutional right to confrontation. However, the statements made by James are not hearsay under the combined affect of Kan. Stat.Ann. § 60–460(a) and Kan.Stat.Ann. § 60–460(f or j) provided James was available for cross examination. *See State v. Rice,* 261 Kan. 567, 932 P.2d 981, 993 (1997) (holding Whitten could testify as to statements made to Whitten by Frazier concerning things defendant told Frazier implicating defendant in the crime because Frazier was available for cross-examination).

■ The court agrees with Magistrate Judge Walter that James Gettings was available for cross-examination. "[T]he Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *Unites States v. Schwanke,* 598 F.2d 575, 581 (10th Cir.1979). James was present at the trial and testified as a witness on behalf of the State. James initially testified that he did not know if he made the statements implicating his father. He ultimately testified that he made the statements, but they were false. He claimed he lied to get a deal on an unrelated theft charge. The defense cross-examined James Gettings. Because James Gettings testified and was available at trial for cross examination, petitioner was not denied his rights under the Confrontation Clause. *See Rice,* 932 P.2d at 993 (where witness testified that the statements she made were not true, defendant "had the opportunity to fully cross-examine the declarant about the circumstances surrounding the alleged statement, whether the statements was made, and whether it was true.")

We agree with Magistrate Judge Walters that petitioner has not shown prejudice resulted from appellate counsel's failure to raise this issue on appeal.

**Claim 3.** Petitioner also claims that Magistrate Judge Walter improperly determined that he was not prejudiced by counsel's failure to argue on appeal that the testimony of Officers Keller and Heinrich was hearsay and denied his right to confrontation.

Officers Keller and Heinrich testified at trial concerning statements made to them by James Gettings. Kan.Stat.Ann. § 60–460(a) provides that a statement is not inadmissible hearsay if it was "previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter." The Kansas Supreme Court has permitted officers to testify about conversations with witnesses who were available at trial for cross-examination. *See State v. Ralph,* 217 Kan. 457, 537 P.2d 200, 203 (1975) (holding an officer could testify as to the defendant's mother's statement that her son was a drug addict provided the mother was available for cross-examination).

██ As discussed in claim two, James Gettings' testimony was not hearsay and he was available for cross-examination. Because James Gettings was available for cross-examination, the Officers' testimony was admissible. Magistrate Judge Walter correctly determined that appellate counsel was not ineffective for failing to raise the issue on appeal.

**Claim 4.** Petitioner objects to Magistrate Judge Walter's finding that he was not prejudiced by the use of the April 30, 1987, taped statement of James Gettings.

Petitioner first argues that the defense was not allowed to use the taped statement when it was most important, during the motion in Limine. Upon production of the taped statement, the court reopened the motion in Limine. Defense counsel was given the opportunity to examine James Gettings and Captain Mower, who took the statement. Defendant has not shown how he was prejudiced by counsel's failure to raise this issue on appeal.

██ Petitioner next argues that the tape included statements of other crimes, specifically an uncharged arson and the threatening of the State's main witness. When the defense called James Gettings, defense counsel inquired as to the reason James Gettings had lied in previous statements to the detectives. On cross, the prosecution asked James Gettings whether the detective was interviewing him about another arson. The court ruled that evidence of other crimes was not to be explored. The court then instructed the jury to disregard any evidence not related to the case: "Members of the jury, you have heard some testimony concerning activities that are or could be criminal in nature but has no connection with this case. That evidence is stricken from this record and you are not to consider it." The instruction is specific. The record does not support petitioner's argument that he was prejudiced by counsel's failure to raise this issue on appeal.

Petitioner has also failed to demonstrate he was prejudiced by the failure of appellate counsel to appeal the prosecution's attempts to show James Gettings changed his testimony as a result of threats by his father. Magistrate Judge Walter's findings in the report and recommendation are adopted.

**Claim 5.** Petitioner also objects to Magistrate Judge Walter's finding that he was not prejudiced by the State using improper impeachment and inadmissible hearsay to present its case. In petitioner's objections, he fails to address Magistrate Judge Walter's finding that this argument raises hearsay and confrontation issues already discussed and rejected. Therefore, the court adopts Magistrate Judge Walter's report and recommendation on this claim.

**Claim 6.** Finally, petitioner claims that Magistrate Judge Walter incorrectly determined that he was not prejudiced by prosecutorial misconduct. Petitioner points to six different remarks made by the prosecutor during closing argument. Each has been considered by the court.

In Kansas, "improper remarks made in closing argument are grounds for reversal only when they are so gross and flagrant as to prejudice the jury against the defendant and deny him a fair trial." *State v. Baker*, 249 Kan. 431, 819 P.2d 1173, 1184 (1991) (citing *State v. McKessor*, 246 Kan. 1, 785 P.2d 1332, 1340 (1990)). To determine whether a trial error is harmless or prejudicial, the court must examine the trial record as a whole and not each isolated incident viewed by itself. *State v. Whitaker*, 255 Kan. 118, 872 P.2d 278, 290 (1994).

The court agrees with Magistrate Judge Walter that although the statements complained of are improper, they are not "so gross and flagrant as to prejudice the jury." When the comments are taken in light of the whole record, particularly in light of the closing arguments, they did not prejudice petitioner.

## V. CONCLUSION

The court has determined that the objections to the Report and Recommendation are without merit. All of the arguments raised by the objections were either addressed and correctly decided by Magistrate Judge Walter in the Report and Recommendation or would have no impact on the outcome of the case. Upon reviewing the objections, the court has found no basis for rejecting or modifying the Report and Recommendation.

**IT IS THEREFORE BY THE COURT ORDERED** that the Report and Recommendation (Doc. 35) is accepted and adopted. Petitioner's habeas corpus petition is dismissed and all relief is denied.