**David L. CULLEN, Plaintiff,**

v.

**Michael J. ASTRUE,[1] Commissioner of Social Security, Defendant.**

No. 05–4142–JAR.

United States District Court, D. Kansas.

March 13, 2007.

---

1. In February 2007, Michael J. Astrue was sworn in as the new Commissioner of the Social Security Administration. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

Jean C. Owen, Law Office of Jean C. Owen, Mission, KS, for Plaintiff.

Jackie A. Rapstine, Office of United States Attorney, Topeka, KS, for Defendant.

### MEMORANDUM AND ORDER ADOPTING RECOMMEN-DATION AND REPORT

ROBINSON, District Judge.

The Commissioner of Social Security denied Plaintiff's application for disability insurance benefits under the Social Security Act. Plaintiff sought review of the Administrative Law Judge's ("ALJ") decision and the Magistrate Judge, the Honorable John Thomas Reid issued a Recommendation and Report (Doc. 12) on January 30, 2007, which recommended the Commissioner's decision be affirmed. This matter is currently before the Court on Plaintiff's Objections (Doc. 13) to the Recommendation and Report and Defendant's Response (Doc. 14) to Plaintiff's Objections.

The standards the Court must employ when reviewing objections to a recommendation and report are clear.[2] Only those portions of a recommendation and report identified as objectionable will be reviewed.[3] The review of those identified portions is *de novo* and the Court must "consider relevant evidence of record and not merely review the magistrate judge's recommendation."[4]

Plaintiff objects to those portions of the Recommendation and Report which: (1) found that the ALJ's error in not considering the opinion of Dr. Zimmerman, was harmless error; (2) upheld the ALJ's eval-

---

2. *See* 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72.

3. *See Garcia v. City of Albuquerque,* 232 F.3d 760, 767 (10th Cir.2000); *Gettings v. McKune,* 88 F.Supp.2d 1205, 1211 (D.Kan.2000).

4. *See Griego v. Padilla,* 64 F.3d 580, 584 (10th Cir.1995) (citation omitted).

uation that plaintiff's subjective complaints of frequent bowels, dumping syndrome and severe fatigue were not credible; and (3) consequently upheld the ALJ's determination that plaintiff had an RFC for light, non-physically stressful work that allowed ready access to restroom facilities. Defendant responds by urging the Court to adopt the Recommendation and Report, without defendant providing any additional analysis or substantive argument.

The Court has conducted a *de novo* review, considering the relevant evidence of record, and agrees with Magistrate Judge Reid's finding that the ALJ's credibility and RFC determinations should be affirmed. As Judge Reid explained at length, the ALJ discounted plaintiff's credibility based on numerous reasons evidenced in the record, as set forth in more than two pages of the ALJ's decision. Further, Judge Reid appropriately examined the ALJ's findings in light of the well recognized *Luna*[5] factors for evaluating subjective testimony regarding symptoms, as well as the factors for evaluating credibility under the regulations promulgated by the Commissioner. As Judge Reid explained, these regulations largely overlap and expand on the same factors set forth in *Luna*. Nonetheless, plaintiff fails to identify what factors in the regulations Judge Reid did not apply in his evaluation of his credibility, just as in his submissions to Judge Reid, plaintiff failed to support his allegations that the ALJ had failed to consider the factors under the regulations.

Moreover, this Court agrees with Judge Reid's determination that the ALJ's failure to consider Dr. Zimmerman's report was harmless error. Dr. Zimmerman's opinion

was of limited utility. The only medical evidence available to Dr. Zimmerman during the relevant time period of January 1, 1992 through September 30, 1996, were the records of Dr. Kleinholz, whose findings were based solely on plaintiff's subjective complaints. For these reasons, Plaintiff's objections are denied and the Court accepts the January 30, 2007 Recommendation and Report and adopts it as its own.

**IT IS THEREFORE ORDERED** that Plaintiff's Objections to the Recommendation and Magistrate Judge Reid (Doc. 13) shall be denied.

**IT IS FURTHER ORDERED** that the January 30, 2007 Recommendation and Report (Doc. 12) shall be adopted by the Court as its own.

**IT IS SO ORDERED.**

DAVID L. CULLEN, Plaintiff,

v.

LINDA S. McMAHON,[1] Acting Commissioner of Social Security, Defendant.

## REPORT AND RECOMMENDATION

REID, United States Magistrate Judge.

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423(hereinafter the Act). The matter has been referred to this court for a report and recommendation. The court recommends the Commissioner's decision be AFFIRMED.

---

**5.** *See Luna v. Bowen,* 834 F.2d 161–166 (10th Cir.1987).

**1.** On Jan. 20, 2007, Linda S. McMahon became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the

Federal Rules of Civil Procedure, Linda S. McMahon is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I. Background

Plaintiff's application for disability insurance benefits was denied initially and upon reconsideration. (R. 26, 38–42). Plaintiff sought and was granted a hearing before an Administrative Law Judge (ALJ) on Oct. 21, 2004. (R. 26, 458–508). Plaintiff was represented by an attorney at the hearing, and plaintiff and a vocational expert testified. (R. 26, 458, 459). On Nov. 9, 2004, the ALJ issued a decision in which he found, at step four of the sequential evaluation process, that during the relevant period plaintiff had the functional capacity to perform his past relevant work as a cable television marketing director or marketing manager, and as a pager company account manager. (R. 26–37). Therefore, the ALJ found plaintiff is not disabled within the meaning of the Act, and denied his application. (R. 36, 37).

Specifically, the ALJ considered whether plaintiff was disabled within the meaning of the Act at any time between plaintiff's alleged onset of disability on Jan. 1, 1992 and the date plaintiff last met the insurance requirements of the Act, Sept. 30, 1996. (R. 26–27). He determined that during the applicable time frame plaintiff had a combination of impairments which was severe within the meaning of the Act, consisting of a history of pancreatic cancer requiring extensive surgery but without recurrence, associated development of adult respiratory distress syndrome, a single episode of acute pancreatitis which resolved, and a history of moderate gastritis. (R. 27). He found that during the applicable time period plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in the Listing of Impairments. (R. 27–28).

The ALJ next considered plaintiff's testimony and the record evidence, including medical evidence, and assessed plaintiff's residual functional capacity (RFC) during the applicable time frame. (R. 29–36). He found plaintiff's allegations not credible and assessed plaintiff's RFC for light, nonphysically stressful work, not requiring prolonged exposure to extremes of environmental irritants, but allowing ready access to restroom facilities. (R. 36). Based upon the RFC assessed, the vocational expert's testimony, and the record evidence, the ALJ determined that plaintiff was able, during the applicable time frame, to perform all of his past relevant work. *Id.*

Plaintiff sought Appeals Council review of the ALJ's decision and submitted additional evidence for the Appeals Council's consideration. (R. 13–17, 21–22, 436–57). The Appeals Council issued an order making the additional evidence part of the administrative record (R. 12), but denied plaintiff's request for review of the hearing decision. (R. 8–11). Consequently, the ALJ's decision is the final decision of the Commissioner. (R. 8); *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir.2003). Plaintiff now seeks judicial review.

## II. Legal Standard

The court's review is guided by the Act. 42 U.S.C. § 405(g). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir.2001). The court must base its decision only upon the administrative record, but in this case that includes the evidence made a part of the record by order of the Appeals Council. *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir.1994). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the

conclusion. *Gossett v. Bowen,* 862 F.2d 802, 804 (10th Cir.1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." *White,* 287 F.3d at 905 (quoting *Casias v. Sec'y of Health & Human Serv.,* 933 F.2d 799, 800 (10th Cir.1991)). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *Gossett,* 862 F.2d at 804–05; *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the economy. *Id.*

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.[2] 20 C.F.R. § 404.1520 (2004);[3] *Allen v. Barnhart,* 357 F.3d 1140, 1142 (10th Cir.2004); *Ray,* 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the Listing of Impairments. *Id.* at 750–51. If claimant's impairments do not meet or equal the severity of a listed impairment, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520. This assessment is used at both step four and step five of the process. *Id.*

After assessing claimant's RFC, the Commissioner evaluates steps four and five—whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy. *Williams,* 844 F.2d at 751. In steps

2. In his brief, plaintiff states that the Commissioner has promulgated an eight-step sequential process to be used in this case. (Pl.Br., 8)(citing 20 C.F.R. § 404.1594(f) (2006)). However, the eight-step process outlined in § 404.1594 was promulgated by the Commissioner to satisfy the Social Security Act's requirement that she may terminate benefits of an individual previously determined to be disabled only if she finds that the physical or mental impairments which formed the basis for award of benefits have ceased, do not exist, or are no longer disabling. 42 U.S.C. § 423(f). Here, there is neither allegation nor evidence that plaintiff has previously been determined by the Commissioner to be disabled.

The court notes that the "medical improvement" standard and its eight-step process

from 20 C.F.R. § 404.1594 are also applied in "closed period" cases in which the Commissioner determines that a claimant was disabled but that the disability ceased at a particular point. *Shepherd v. Apfel,* 184 F.3d 1196, 1198, 1200 (10th Cir.1999). Here, plaintiff claimed that he has been continuously disabled since Jan. 1, 1992. Considering that claim, the ALJ determined that plaintiff was not disabled at any time after Jan. 1, 1992 and before his insured status ended.

Thus, the "medical improvement" standard and the eight-step process do not apply here.

3. The Decision below was made on Nov. 9, 2004. (R. 37). Therefore, the court uses the 2004 Code of Federal Regulations in its review.

one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. *Dikeman v. Halter,* 245 F.3d 1182, 1184 (10th Cir. 2001); *Williams,* 844 F.2d at 751 n. 2. At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. *Id.; Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir.1999).

Plaintiff claims the ALJ erred in improperly evaluating the credibility of his allegations of symptoms and in assessing the evidence regarding his bowel habits and severe fatigue, and failed in the duty to develop the record regarding plaintiff's bowel habits. He claims that these errors resulted in the ALJ erroneously assessing plaintiff's RFC, and propounding an inadequate hypothetical question to the vocational expert. The Commissioner argues that the ALJ properly determined plaintiff's allegations were not credible, properly evaluated the evidence and assessed plaintiff's RFC, and properly propounded a hypothetical question based upon the RFC assessed. Because the ALJ's credibility determination necessarily affected his analysis of the evidence regarding plaintiff's bowel habits and severe fatigue and his assessment of plaintiff's RFC, the court first addresses the credibility determination and plaintiff's claims of error therein.

### III. The Credibility Determination

#### A. *Standard for Evaluating Credibility*

■ An ALJ's credibility determinations are generally treated as binding on review. *Talley v. Sullivan,* 908 F.2d 585, 587 (10th Cir.1990). "Credibility determinations are peculiarly the province of the finder of fact." *Diaz v. Sec'y of Health & Human Serv.,* 898 F.2d 774, 777 (10th Cir.1990). Therefore, in reviewing the ALJ's credibility determinations, the court

will usually "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." *Casias v. Sec'y of Health & Human Serv.,* 933 F.2d 799, 801 (10th Cir.1991). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir.1988).

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms. *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with the symptom of pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. *Gatson v. Bowen,* 838 F.2d 442, 447 (10th Cir.1988). Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment, *Luna v. Bowen,* 834 F.2d 161, 163 (10th Cir.1987) (citing *Frey [v. Bowen],* 816 F.2d [508,] 515 [(10th Cir.1987)]; *Nieto v. Heckler,* 750 F.2d 59 (10th Cir. 1984)), that could reasonably be expected to produce the alleged disabling pain. *Luna,* 834 F.2d at 163; 42 U.S.C. § 423(d)(5)(A). This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling. *Musgrave v. Sulli-*

*van,* 966 F.2d 1371, 1375–76 (10th Cir. 1992) (citing *Luna,* 834 F.2d at 163–64). *Thompson,* 987 F.2d at 1488.

In evaluating symptoms, the court has recognized a non-exhaustive list of factors which should be considered. *Luna,* 834 F.2d at 165–66. These factors include:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.1995) (quoting *Thompson,* 987 F.2d at 1489).

The Commissioner has promulgated regulations suggesting factors to be considered in evaluating credibility which overlap and expand the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

## B. *Plaintiff's Claims and the ALJ's Findings*

Plaintiff appears to accept that the ALJ applied the *Luna* framework to evaluate the credibility of plaintiff's allegations of symptoms of multiple bowel movements and severe fatigue which preclude work. He claims, however, that the ALJ failed to evaluate plaintiff's credibility on the basis of the regulatory factors and "chose to rely on isolated parts of the record to justify his finding that Plaintiff was not credible." (Pl.Br., 17). He further claims the credibility finding is not supported by the record evidence. *Id.*

Here, the ALJ allocated most of the decision to summarizing and evaluating the record evidence and plaintiff's allegations, and explaining his credibility determination. (R. 28–36). The explanation of his credibility determination alone includes more than two pages in the decision. (R. 34–36).

The ALJ gave numerous reasons for finding plaintiff's allegations not credible. He noted plaintiff's stable work history but "markedly decreased earnings in the 3–year period immediately prior to his alleged onset date," and the "quarter-million dollar financial assets" upon which he began to live thereafter. (R. 34). He noted normal cardiac findings, no evidence of cardiomegaly, and essentially normal respiratory findings between Jan. 1992 and Sept. 1996, contrary to plaintiff's contention of severe fatigue and symptoms of congestive heart failure during the relevant time frame. *Id.* He noted minimal treatment during the relevant time frame. *Id.* He noted that the treatment notes during the relevant time frame do not reflect reports to physicians of the severe symptoms alleged in plaintiff's application and hearing testimony. *Id.* He noted that plaintiff's reports contained in the treatment notes during the relevant time frame do not reflect the severe symptoms reported to physicians after plaintiff applied for disability insurance benefits. *Id.* He noted plaintiff's reports to physicians during the relevant time frame deny severely limiting symptoms. *Id.* He noted Dr. Challa's 1993 certification that plaintiff was fit to return to flying aircraft and plaintiff's report that he had been working out quite a bit and

had been removing carpet from his home in 1993. *Id.* He noted plaintiff's statements when he was hospitalized for pancreatitis in 1994 and 1997 that his symptoms had been of relatively recent acute onset and that otherwise he had not had recurrent abdominal pain or nausea since his cancer surgery in 1991. *Id.*

The ALJ explained that the medical evidence during the relevant time frame revealed hypertrophic bowel folds in the small intestines and rapid bowel transit times but there was no evidence *during the relevant time frame* of excessive multiple bowel movements which would preclude work, as alleged by plaintiff and reported by plaintiff to physicians in 2002 and later. (R. 35). He noted that in a doctor's visit less than one month after the expiration of his insured status, plaintiff complained only of recent onset of acute prostate and testicular pain subsequent to recent, vigorous sexual activity. *Id.* He explained that during the relevant time frame no physician suggested severe functional limitations or opined that plaintiff was disabled. *Id.* Rather, he noted that Dr. Lui released plaintiff for work after recovery from cancer surgery and its complications, and three and one-half months before plaintiff alleges onset of disability. *Id.* He noted that Dr. Challa opined that plaintiff was medically fit to fly aircraft, and that Dr. Challa's physician assistant reported that their treatment records between 2000 and 2002 contained nothing indicating disability. *Id.* He noted that the treatment records document plaintiff's reports during the relevant time frame of activities inconsistent with the degree of severe symptoms alleged in his testimony. *Id.* Finally, he noted plaintiff's later allegations of disabling symptoms during the relevant time frame are inconsistent with his contemporaneous reports to physicians during the time frame. *Id.* The ALJ concluded that plaintiff's allegations are not credible. (R. 36).

### C. Discussion

Plaintiff argues that the ALJ's credibility finding relies only on isolated portions of the record and is not supported by substantial evidence in the record. Plaintiff does not specify what portions of the record he believes were ignored by the ALJ. Moreover, the court's review of the record confirms the ALJ's findings. In 1991, plaintiff was diagnosed with pancreatic cancer and underwent an extended hospitalization involving multiple surgeries and complications. During that period there was serious question regarding plaintiff's prognosis. However, the record reveals that plaintiff recovered, he was released to work and thereafter certified fit to fly aircraft, and his cancer has not recurred. (R. 29–30, 144–251). Admittedly, plaintiff has had a shortened bowel and symptoms resulting. However, the evidence does not establish symptoms so severe as to preclude plaintiff's past relevant work.

Between Jan. 1992 and Sept. 1996, the record reveals plaintiff was hospitalized once with pancreatitis for six days in Nov. 1994. (R. 257–63). However, as the ALJ noted, the pancreatitis was of recent onset, was acute, and resolved with treatment. (R. 258). Moreover, plaintiff denied any severe abdominal symptoms after his cancer surgery until hours before the hospitalization. (R. 259–60). In that same four and one-half year period, the record reveals eight doctors' contacts, including Dr. Challa's letter certifying fitness to fly (R. 344), and Dr. Lui's note that plaintiff stopped by to say hello. (R. 254). The visits each related to medical problems of an acute nature (unrelated to plaintiff's alleged ongoing disability) which were addressed and apparently resolved. (R. 254, 257–63, 338–41, 343–44, 346–51, 385–86). As noted by the ALJ, the records of those visits do not contain reports of ongoing

symptoms which plaintiff now alleges he had during the period and which he alleges were so severe as to be disabling during the period.

Most of the evidence plaintiff cites in arguing that the record does not support the ALJ's credibility determination consists of plaintiff's hearing testimony and his reports of his past work history. (Pl. Br., 18)(citing (R. 94, 479, 492–93)). Plaintiff also cites to evidence of a gastric biopsy and an "Upper GI" series showing inflammation, hypertrophic gastric folds, and rapid small bowel transit. *Id.*(citing (R. 341, 350)). However, the evidence cited by plaintiff was considered and noted by the ALJ. Moreover, plaintiff does not show how the presence of hypertrophic gastric folds, rapid small bowel transit, and the other findings in the cited reports require a finding that plaintiff had symptoms as severe as alleged.

In her response brief, the Commissioner cited much evidence in the record tending to support the ALJ's credibility determination. (Comm'r Br., 6–12, *passim* ). In his reply, plaintiff argued, "Such effort is no more than an exercise in *'post hac'* justification and does not excuse the ALJ's failure to apply the appropriate legal factors in assessing Plaintiff's credibility." (Reply, 4). To the extent plaintiff is arguing that the evidence cited was not relied upon by the ALJ in his credibility determination, the court disagrees. The court notes that most of the Commissioner's citations were to both the ALJ's statement in the decision and to the location of the underlying evidence in the record. (Comm'r Br., 6–12, *passim* ). While some of the Commissioner's arguments are not worded in identical language to that used by the ALJ, the Commissioner's arguments were based upon the analysis used by the ALJ. In any case, the court's analysis above is based only upon the ALJ's discussion in the decision, the ALJ's summary of evi-

dence, and the ALJ's citation to the record in support of his decision. The court is aware of its duty to review the sufficiency of the Commissioner's decision only on the bases relied upon in the decision. *SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

It is possible plaintiff is arguing that the ALJ failed to consider particular regulatory factors present in this case and relevant to the credibility determination. However, plaintiff does not point to particular factors which were not considered by the ALJ, which are relevant in this case, and which require a finding contrary to that of the ALJ. The court recognizes no obvious omissions in the ALJ's consideration and notes that, as discussed above, the ALJ's explanation relies upon the regulatory factors and other factors relevant to a credibility finding in this case. The court will not insist upon a formalistic factor-by-factor analysis of the evidence. *White,* 287 F.3d at 909. Thus, the ALJ sufficiently considered the factors relevant to a determination of credibility.

■ Despite plaintiff's assertion to the contrary, the court finds that the ALJ's credibility determination is supported by and affirmatively linked to substantial evidence in the record. The court finds no error in the ALJ's credibility finding.

## IV. Residual Functional Capacity Assessment

■ Plaintiff claims that in assessing RFC, the ALJ did not properly evaluate evidence regarding the number of bowel movements he has each day, the fact that plaintiff has dumping syndrome, and the limitations caused by plaintiff's severe fatigue. (Pl.Br., 10–14). He argues that the ALJ failed his duty of inquiry to "establish to what extent Plaintiff's bowel habits may have interfered with his ability to sustain any type of activity" (Pl.Br., 12), and the

Appeals Council inappropriately rejected the medical report of Dr. Zimmerman which was presented for the first time after plaintiff requested review of the hearing decision. (Pl.Br., 13). The Commissioner argues that the ALJ properly evaluated the evidence and presented an RFC assessment which is supported by substantial evidence in the record.

Plaintiff begins his argument asserting that the ALJ erred in finding that plaintiff experienced only four to five bowel movements daily. (Pl.Br., 10). Plaintiff argues that the ALJ mischaracterized his hearing testimony in reaching this finding. Plaintiff's argument misses the point on several levels. First, the ALJ did not make a finding that plaintiff has only four or five bowel movements a day. The portion of the decision cited by plaintiff contains the ALJ's summary of a portion of *plaintiff's testimony:* "He asserted that he experiences 4–5 *or more* bowel movements daily, with bowel incontinence such that he must go quickly; however, he specified his symptoms do not require use of protective undergarments or a colostomy." (R. 28)(emphasis added). Second, as emphasized above, the ALJ's summary of plaintiff's testimony accounts for plaintiff's testimony that he has "days I might do pretty good" (R. 497) with four or five bowel movements, and *days in which he has more* bowel movements. This is not a mischaracterization of the testimony. Third, and finally, the ALJ found that plaintiff's allegations of symptoms are not credible and, as discussed above, that finding is supported by substantial evidence. Therefore, to the extent plaintiff's argument rests upon his testimony or his reports to doctors that he has as many as twenty bowel movements a day, the ALJ properly discounted that testimony and need not accept it in making his RFC assessment.

Plaintiff argues that the ALJ's RFC assessment is inconsistent with the fact that he has "dumping syndrome." (Pl.Br., 10–11); (Reply, 2–3). Plaintiff provided evidence which was accepted by the Appeals Council and is, therefore, a part of the record considered by this court, that "dumping syndrome" consists of symptoms of widely varying severity occurring within thirty minutes after eating, which symptoms include palpitations, weakness, nausea, and diarrhea, and which is "usually caused by excessively rapid emptying of the stomach after removal of a part of the stomach that includes the pylorus." (R. 444). The ALJ noted that after his surgeries in 1991, plaintiff "developed some symptoms suggestive of a dumping-like syndrome, but upon counseling and adjustments, that condition improved." (R. 30). Plaintiff objects to the ALJ's characterization stating, "Nowhere in the medical evidence is there an indication that Plaintiff ever experienced any improvement in the dumping syndrome symptoms." (Pl.Br., 11).

The record supports the ALJ's characterization despite the fact that there is no specific statement in the record that plaintiff's "dumping syndrome symptoms improved." In the discharge summary at issue, prepared after plaintiff's pancreatic cancer, surgery, and complications, Dr. Lui summarized the course of plaintiff's hospital stay. (R. 151–52). In the last paragraph of this summary, Dr. Lui explained how plaintiff's "pulmonary status appeared to improve," and "The patient eventually improved." (R. 152). He then stated,

The patient's nutritional status improved. His mind became clearer. Hyperalimentation was stopped completely and patient began to rely on his own oral intake. By the time of discharge he was eating at least 70–80% of all the food put in front of him. He did have symptoms suggestive of dumping-

like syndrome and after advise [sic] and adjustments he was able to adjust to this. At the time of discharje [sic] his weight was approximately 165 pounds and nutritionally judged to be taking enough protein as well as caloric intake. (R. 152). A fair reading of the discharge summary indicates that plaintiff was advised how to accommodate the "symptoms suggestive of dumping-like syndrome," adjustments were made to his treatment, and no further action was taken. It is an appropriate conclusion for the ALJ to state that the condition improved.

Further, the discharge summary is dated Jul. 2, 1991, and the court found no other mention in the medical records of a dumping syndrome or of a dumping-like syndrome until Dr. Zimmerman noted plaintiff's statement to the physician "that he was told that he had a dumping syndrome" (R. 452), and Dr. Zimmerman then stated in the "Summary" to his report that plaintiff has had eight to twenty bowel movements a day since his operations in 1991 "due to a dumping syndrome." (R. 454). Plaintiff's reply brief stated that review of the entire record reveals he had a dumping syndrome resulting from the gastrointestinal surgery, and cited to eight locations in the record consisting of sixteen pages, thereby implying that dumping syndrome appears multiple times in the record. (Reply, 2)(citing (R. 173–76, 180–82, 151–53, 452, 454, 479, 403, 309, 436)).

Consideration of the evidence cited by plaintiff reveals that only the record at 151–53 relates to anything approaching a diagnosis of dumping syndrome. The report at 151–53 does not contain a diagnosis of dumping syndrome but mentions only "symptoms suggestive of dumping-like syndrome," and, as noted above, the ALJ reasonably concluded that the problem was addressed and improved. In the record at 173–76 and 180–82, are reports from plaintiff's surgeries in 1991, but no men-

tion of dumping syndrome. Page 309 is a page in Dr. Khanna's 2002 report of consultative examination in which the examiner notes plaintiff reported "constant abdominal pains, 8–15 loose stools, fatigue, and weakness" since his 1991 surgery, but there is no mention of a dumping syndrome in Dr. Khanna's report. (R. 309–15). Page 403 is from a report of plaintiff's hospital stay in Bozeman, Montana in 2004, and mentions nothing of a dumping syndrome. (R. 402–04). Page 436 is the first page of plaintiff's "Revised Affidavit" presented to the Appeals Council, it is not a medical record, and even it does not mention dumping syndrome. (R. 436–39). Page 479 is a page of the hearing transcript containing a portion of plaintiff's hearing testimony regarding his surgery, but, again contains no reference to dumping syndrome.

Plaintiff's argument that the ALJ failed his duty to develop the record regarding plaintiff's dumping syndrome and bowel habits reflects merely that plaintiff disagrees with the ALJ's interpretation of the evidence. The argument is based primarily upon plaintiff's testimony at the hearing, his statements in papers presented to the Commissioner, and his reports to certain physicians made after 2000 that he has constant symptoms of dumping syndrome and has from eight to twenty bowel movements a day. Plaintiff's argument fails because the ALJ properly found plaintiff's testimony not credible as discussed above. Moreover, as discussed above, the ALJ's summarization of the medical evidence in evaluating plaintiff's credibility is also supported by substantial evidence in the record. The medical records during the relevant time, as noted by the ALJ, do not contain reports of ongoing symptoms which plaintiff now alleges he had during the period and which he alleges were so severe as to be disabling during that period. (R. 254, 257–63, 338–51, 385–86). The

medical records reveal that the abdominal pains and complaints reported to physicians during the relevant period related only to acute, short-term conditions which were treated and resolved, and do not reveal continuing complaints relating to the alleged disabling symptoms. The ALJ had no duty to develop the record further because the record is sufficient to reach a decision, and supports the decision reached.

Finally, plaintiff claims that the Appeals Council "inappropriately rejected the December 29, 2004 medical report of Dr. Zimmerman, suggesting that said information was about a later time." (Pl.Br., 13) (citations omitted). The Commissioner argues that the only basis for Dr. Zimmerman's disabling limitations is plaintiff's statements which were properly found not credible by the ALJ. (Comm'r Br., 13–14). The Commissioner thus implies that it was harmless error for the Appeals Council to state that Dr. Zimmerman's report relates only to the time period after plaintiff's insured status expired.

As plaintiff's brief suggests, the Appeals Council specifically discussed Dr. Zimmerman's report:

> We also looked at the report from Daniel D. Zimmerman, MD, dated December 29, 2004. The Administrative Law Judge decided your case through September 30, 1996, the date you were last insured for disability benefits. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last fully insured for disability benefits.

(R. 9).

In the *"SUMMARY"* to his report, Dr. Zimmerman concluded:

> Considering his status *up to the date when he was last insured for Social Security benefits,* I would state, considering abdominal pain due to acute and subsequently chronic pancreatitis, severe fatigue, and shortness of breath, that Mr. Cullen would not have been able to have been employed even at a sedentary level, eight hours per day, five days per week, i.e., on as [sic] full time basis. The frequency of bowel function would have precluded him from being able to work for an eight hour work shift without frequent restroom breaks. The severe fatigue would also have impacted on his ability to perform even sedentary work on a consistent basis.

(R. 454–55)(emphasis added).

Contrary to the Appeals Council's understanding, and although Dr. Zimmerman's report is dated Dec. 29, 2004, the physician specifically stated that his conclusions relate back to the relevant time frame before plaintiff's insured status expired. Therefore, the Appeals Council's statement is erroneous and the court must determine whether that error is harmless.

The Tenth Circuit has warned that a court should use caution in applying harmless error analysis to a dispositive finding of fact when undertaking judicial review of a Social Security decision. *Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir.2004).

> First, if too liberally embraced, it could obscure the important institutional boundary preserved by *Drapeau's* admonition that courts avoid usurping the administrative tribunal's responsibility to find the facts. Second, to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action recognized in *SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943) and its progeny. With these caveats, it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right ex-

ceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

*Id.* (referring to *Drapeau v. Massanari* 255 F.3d 1211, 1214 (10th Cir.2001)).

■ Here, no reasonable factfinder reviewing the record and the decision below could have determined that Dr. Zimmerman's report would require a change in the ALJ's decision. The regulations require that the Appeals Council will review a case if: (1) the ALJ abused his discretion, (2) the decision reflects an error of law, (3) substantial evidence in the record does not support the ALJ's decision, or (4) the decision involves a "broad policy or procedural issue that may affect the general public interest." 20 C.F.R. § 404.970. Dr. Zimmerman's report might have an effect upon a determination of number (3), whether substantial evidence in the record (including the new evidence) does not support the ALJ's decision, but would not affect the analysis regarding any of the other factors.

The Commissioner argued that the only basis for Dr. Zimmerman's conclusions is plaintiff's allegations. (Comm' r Br., 13–14). Dr. Zimmerman stated the records he had available in preparing his report, and listed medical records only from Bozeman Deaconess Hospital in June, 2004; Dr. Challa's records dated in Apr. and Jul., 2002; Central Medical Consultants' report dated Mar. 2002 (Dr. Khanna's report); Stormont Vail Regional Medical Center records from 1991; and Dr. Kleinholz's records from 1991 and 1992. Thus, the only *medical evidence* available to Dr. Zimmerman regarding plaintiff's condition *during the relevant period* from Jan. 1,

1992 through Sept. 30, 1996 is Dr. Kleinholz's records from 1992.

The administrative record reveals plaintiff only visited Dr. Kleinholz once in 1992: Mar. 27, 1992. (R. 385, 386). At that visit, plaintiff reported he was doing well. (R. 385). He reported occasional congestion and a little discomfort in the chest, but no significant cough, sputum production, or *dyspnea*.[4] *Id.* The only potentially negative finding was "some clubbing of the nail beds. There is questionable cyanosis but finger pulse oximetry shows saturation to be 100%." *Id.* The doctor advised plaintiff to establish himself with Dr. Challa as his primary doctor, to get a flu shot in the fall, and to walk on a regular basis. *Id.* He noted plaintiff was not taking any medicines on a regular basis and the doctor did not feel any were necessary. *Id.* The doctor concluded, "I will see him again in a year or sooner if requested by his other physicians." *Id.* The ALJ summarized this treatment note in his decision. (R. 30).

Therefore, the only evidence available to Dr. Zimmerman that *during the relevant time frame* plaintiff had dumping syndrome with eight to twenty bowel movements a day, abdominal pain due to acute and subsequent chronic pancreatitis, severe fatigue, and shortness of breath was the statements of plaintiff. Yet, as discussed above, the ALJ properly found plaintiff's allegations of disabling symptoms during the relevant time frame were not credible. Based upon this record, no reasonable factfinder could find that Dr. Zimmerman's report is sufficient to change the ALJ's decision. The Appeal's Council's error in stating that Dr. Zimmerman's report related only to the time after plaintiff's insured status expired is harmless.

4. Dyspnea is "difficult or labored respiration." *Webster's New Collegiate Dictionary,* 356 (Henry Bosley Woolf, ed., G. & C. Merriam Co.1977).

Having found no error in the credibility determination or the RFC assessment, there is no basis for the court to find that the hypothetical question presented to the vocational expert was erroneous.

**IT IS THEREFORE RECOM-MENDED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision of the Commissioner.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. *Hill v. Smith-Kline Beecham Corp.*, 393 F.3d 1111, 1114 (10th Cir.2004).